IDA GREENBERG *vs.* THE LOTZ ASBESTOS COMPANY.

First Judicial District, Hartford, May Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued May 15th—decided July 10th, 1929.

*Edwin M. Ryan,* for the appellant (plaintiff).

*M. Joseph Blumenfeld,* with whom, on the brief, was *David R. Woodhouse,* for the appellee (defendant).

WHEELER, C. J. On August 13th, 1927, at about 5.30 o'clock in the afternoon, the plaintiff, while walking northerly on the west sidewalk of Windsor Street in Hartford at a point about five blocks north of the intersection of Main, Morgan and Windsor Streets, was struck from behind by a motortruck owned by the defendant and operated by one William Griggs and suffered serious personal injuries, caused solely by his negligence, for which she seeks to recover of the defendant damages. The vital question on the appeal is whether at the time of the accident Griggs was acting within the scope of his employment with the defendant. Errors predicated upon plaintiff's motion to correct are not well taken; if all of the claimed corrections were granted they would be ineffective in changing the conclusion reached by the trial court.

A summary of the facts is essential to the determination of the vital, indeed the only, substantial ground of this appeal. On July 31st, 1927, Griggs had been employed by the defendant as a substitute for the regular driver of defendant's delivery truck for a definite period of two weeks, which by their contract of hire terminated at noon on August 13th, 1927. Before noon of this day Griggs had been paid by defendant all wages owed him for his work for the period of his hiring. A few minutes before noon of this day Griggs returned to the defendant's warehouse with the truck and was ordered by the acting foreman of defendant to drive to the Y. D. garage on Windsor Avenue in Hartford where defendant kept the truck when it was

444

not in use, and to leave it there. Griggs was then told that he need not report further for duty since the regular driver would return on Monday. The defendant was not doing any business on this afternoon, and its place of business was not open during this time. The shortest route from the defendant's warehouse to the Y. D. garage, and the customary route taken by Griggs when he drove the truck from the warehouse to the garage, was: part of a block south on Windsor Street to Canton Street; thence westerly on Canton Street three blocks to Windsor Avenue, and thence southerly on Windsor Avenue half a block. Upon receiving his orders Griggs drove south on Windsor Street to Canton Street; thence westerly on Canton Street one block to Bellevue Street, and thence northerly on Bellevue Street about half a block north of Canton Street where he lived. When Griggs turned into Bellevue Street he deviated from the shortest and customary route to the garage and did so in violation of his express instructions, solely for purposes of his own which had nothing to do with his employer's business. Griggs went into his house to change his clothes and have dinner and then, at about one o'clock in the afternoon, with three friends drove his truck from his house to Windsor, for the purpose of getting his sister whom he did not find there, and thence he drove to Windsor Locks, in all a distance of twelve or thirteen miles. He then went down the east side of the Connecticut River to East Hartford and on to Hartford to the junction of Main and Morgan Streets. When Griggs arrived in Hartford he stopped at a point three and one half blocks from the defendant's garage and on a direct route to his own home on Bellevue Street. He was on his way at the time of the accident to the Y. D. garage intending to leave the truck there. From the time Griggs turned into Bellevue Street until the accident he was not using

the truck for any purpose of benefit to defendant and was not its agent during this time.

The plaintiff claimed upon the trial, as matter of law, that although Griggs had deviated from his employment and, while driving from his home and up to his return to Main and Morgan Streets, had continued such deviation, at the time of the accident he had returned to the scope of his employment, since he was then proceeding with the intention of returning the truck to the Y. D. garage pursuant to the express orders of the defendant. The rule governing the responsibility of a master for the negligent acts of his servant has never been more accurately or comprehensively stated, at least by this court, than in *Stone* v. *Hills*, 45 Conn. 44, 47: "The rule is that for all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is done, the master is responsible; for acts which are not within these conditions the servant alone is responsible." "This law," we state in *Loomis* v. *Hollister*, 75 Conn. 718 (55 Atl. 561) at page 722, "is based on a rule of public policy, which declares that substantial justice is on the whole best served by making a master responsible for the injuries caused by his servant acting in his service, when set to work by him for his own benefit." A deviation by the servant from the scope of his usual employment, when done by the express or implied direction of the master for his business, or another's, will not relieve the master from liability for the negligent act of the servant, since he has extended the scope of the servant's employment to the new busi-

ness. A deviation from the employment arising either through the negligence, heedlessness or disobedience of the servant, or for his own business, purpose, or pleasure, which is slight and not unusual, while he is still engaged upon his master's employment, will not relieve the master from responsibility. 2 Mechem on Agency (2d Ed.) § 1900; note, 22 A. L. R. 1404. In a deviation of this character there is no abandonment of the employment, either temporary or permanent, merely a lapse from, or a cessation or suspension of the employment, while the relation of master and servant continues during the slight interruption of its fulfillment. In a case where the deviation is clearly of this character the court may, and should, determine as matter of law that the servant was within the scope of his employment. *Ritchie* v. *Waller*, 63 Conn. 155, 28 Atl. 29; *Loomis* v. *Hollister*, 75 Conn. 718, 722, 55 Atl. 561; *Schrayer* v. *Bishop*, 92 Conn. 677, 104 Atl. 349; *Perry* v. *Haritos*, 100 Conn. 476, 124 Atl. 44; *Butler* v. *Hyperion Theatre Co., Inc.*, 100 Conn. 551, 556, 124 Atl. 220. "But in by far the greater number of cases . . . it has been . . . held to be . . . one of fact . . . depending upon the degree of the deviation and all the attendant circumstances." *Ritchie* v. *Waller, supra,* at page 161. To decide this question "the trier must take into account, not alone the mere fact of deviation, but its extent and nature relatively to time and place and circumstances, and all other detailed facts which form a part of and truly characterize the deviation, including often the real intent and purpose of the servant in making it." *Ritchie* v. *Waller, supra,* at page 165.

No definite and determinative test can be made other than to apply to each situation the standard, was the act of the servant reasonable in the light of his employment and the circumstances surrounding his

act? Ordinarily the application of this standard to the facts will be one of fact. The cessation of the relation of master and servant may be by the express or implied direction or consent of the master, for example, the master may grant his servant permission to engage in carrying out some purpose of his own. In such case the master is not liable for injuries or damage caused by the negligence of the servant while so engaged. *Mastrilli* v. *Herz,* 100 Conn. 702, 124 Atl. 835. But when the purpose of the servant is completed and he begins his return to his master's employment the temporary suspension is lifted and the relation of master and servant resumed. As applied to the motor vehicle, MR. JUSTICE CURTIS states our rule in *Mastrilli* v. *Herz, supra,* at page 705: "In the instant case the chauffeur had implied orders to return the car to the garage when his private business was completed; he was operating the defendant's car to the garage for the purpose of discharging the duty for which he was employed and intended to perform when the collision occurred, and was not then engaged in an affair of his own, but was attending to his master's business. The fact that the chauffeur on his return, in the instant case, intended to await his master's orders at the garage instead of in front of a theater, does not essentially differentiate this case from *McKiernan* v. *Lehmaier,* 85 Conn. 111, 81 Atl. 969." See also *Carrier* v. *Donovan,* 88 Conn. 37, 89 Atl. 894; *Shea* v. *Hemming,* 97 Conn. 149, 115 Atl. 686; *Graham* v. *Henderson,* 254 Pa. St. 137, 98 Atl. 870. When the servant is using the automobile for his own purposes and without the master's permission or consent and the relationship of master and servant has been for the time suspended, no liability attaches to the master for the servant's negligent operation of the car during this period, nor until the relation of master and servant is resumed and the act of negligence

resulting in injury occurs within the scope of the servant's employment. When a servant delivering goods for his employer became a carrier of goods for another, without his employer's permission, to and from a railroad station in an adjoining town, we said: "He temporarily threw off his employers' authority, abandoned their business and left their service. They are not responsible for his negligence on this occasion." *Stone* v. *Hills,* 45 Conn. 44, 51. The distinctive difference between a slight deviation by a servant from his employment and a temporary abandonment of that employment is that in the first the relation of master and servant never ceases, while in the second the relation ceases during the period of the abandonment and while the servant is acting entirely independent of his employment. If the abandonment be permanent or complete the relationship of master and servant cannot be resumed since it has been completely severed. But if it is a temporary abandonment of the relationship it may be resumed. We understand the plaintiff's claim to be that, whether the abandonment be temporary or permanent, Griggs had resumed his employment. Where the servant has temporarily departed from his employment, to resume it when he has served some purpose of his own, the determination of the time when resumption began is often not easy of solution. The purpose of the servant coupled with a reasonable connection with the period and the place of the alleged resumption in their relation to the character of the employment are all elements to consider. The place must be within the immediate area or zone of his employment where the deviation first began although the servant "may choose a different way back." *Dockweiler* v. *American Piano Co.,* 160 N. Y. Supp. 270; *Reily* v. *Standard Oil Co.,* 231 N. Y. 301, 304, 132 N. E. 97.

It may be, that if Griggs' work was to have continued after he had returned the truck to the garage and that his purpose when he reached the point where he stopped, three and a half blocks from the garage, was to take the truck to the garage, this would have satisfied the element that he was then within the zone of his employment and the further element, of his purpose to then resume his employment. The time of the absence of Griggs, if his employment had continued the length of his trip, while he was serving, exclusively, his own ends and acting in disobedience to his employer's directions, is impossible to be regarded as a mere temporary abandonment—the absence was too protracted and the journey too extensive. They evidence a relinquishment of his employment. It was a departure from his employment solely for his own purposes and wholly independent of his employer's business. His master's orders took him about four blocks; for his own purposes and his friends' pleasure—contrary to his master's orders—he traveled about twenty-five miles. No departure of that extent can be regarded as a temporary abandonment of a servant's employment. These elements do not portray all of the surrounding circumstances of Griggs' abandonment of his employment, and they must be examined in their entirety in determining whether the servant had made a mere deviation from or a temporary abandonment, or a permanent abandonment of his employment, when his master is charged with the responsibility of compensating one for injuries suffered through the negligence of his servant.

Griggs' contract of hiring ceased at noon of the day of the accident. Compliance with the master's orders to take the truck to the garage and leave it there would have taken a very few minutes. It was not quite noontime when he started with the truck for the garage.

Presumably there was about time to have reached the garage before his contract of hiring expired. When he left his home on Bellevue Street with his three friends, after he had changed his clothes and had his dinner, his contract of hiring was at an end, he was no longer in the employ of the defendant. In such a situation no question can arise as to the right of the servant to resume his employment. After that had ceased he had converted his former master's truck to his own uses and for no act of his during the period of the unlawful use of the truck could his former master be liable.

The court found that at the time of the accident Griggs was not the agent of the defendant. The finding of agency is one of fact and unreviewable since the subordinate facts are not only legally consistent with that finding but incontrovertibly support it. *Russo* v. *McAviney*, 96 Conn. 21, 24, 112 Atl. 657; *Marron* v. *Bohannon*, 104 Conn. 467, 469, 133 Atl. 667. The facts found make out a case of a permanent and complete abandonment of his employment by Griggs. This is the conclusion which the law attaches to conduct such as that of Griggs. We say in *Loomis* v. *Hollister*, 75 Conn. 718, 722, 55 Atl. 561, "if the servant takes his master's team without authority and goes off on an errand of his own, he . . . is not liable for his negligence."

There is no error.

In this opinion the other judges concurred.