ETTA L. PERKINS *vs.* EAGLE LOCK COMPANY.

MALTBIE, C. J., HAINES, HINMAN, AVERY and PEASLEY, Js.

Argued June 13th—decided July 16th, 1934.

*Epaphroditus Peck,* for the appellant (defendant).

*S. Russell Mink,* with whom was *Frederick W. Beach,* for the appellee (plaintiff).

HAINES, J. The facts established by the finding are not questioned upon this appeal, and are, in substance, that the defendant, a manufacturing corporation located at Terryville, in this State, issued and delivered to its employees in June, 1923, an undertaking in writing called a "Certificate of Benefit," together with a letter of transmission setting forth, among other

things, the reasons for the issuance of the certificate, and an explanation of the plan and its purpose, operation and effect. The plaintiff is the widow of Albert L. Perkins, who as an employee received one of these certificates in which the plaintiff's name appears as the beneficiary, "should death of said employee occur while in the employ of said Eagle Lock Co." Save for the names of the employee and the beneficiary, the certificate and letter of transmission are the same as those set forth at length in our decision in *Tilbert* v. *Eagle Lock Co.*, 116 Conn. 357, 165 Atl. 205.

At the time the certificate was received, Perkins was about sixty-eight years of age and had been in the defendant's employ for four years; he continued to work regularly until May 2d, 1927, when he was taken sick at the factory and was assisted to a doctor for medical attention and thence to his home; there on May 3d he suffered a slight shock and on the advice of his physician went with his wife to Norwalk for a rest, the latter part of June. While there the following letter was sent to the defendant:

"Norwalk, Conn., July 1st, 1927.
"Mr. Clowe
"Sir: This is Mrs. Albert Perkins writing. Probably you know Mr. Perkins has been out ill since May 2nd. He wrote his boss Mr. Beaton that he would come in as soon as he was able to. He expected to be able to come in by the 5th, but altho he is much better, the Dr. says he ought to wait a week or two more, so as not to get a set back. If it will not be all right, please drop us a card, and Mr. Perkins says he will try to get down there.

"Mrs. Albert Perkins, R. F. D. No. 61—Box 140, Norwalk, Conn."

The following letter was received in reply:

"July 5, 1927

"Mrs. Albert Perkins,

"R. F. D. No. 61, Box 140,

"Norwalk, Conn.

"Dear Madam: We have your letter of July 1st in reference to Mr. Perkins. Business is not very good and for that reason we are none too busy with the help we already have in the department where Mr. Perkins formerly worked. We regret to state that we will be unable to give Mr. Perkins work even if he should return immediately and conditions do not promise to improve very soon.

"Very truly, Eagle Lock Company,

"By Harry C. Clow, Employment Manager."

On July 27th, 1927, having returned to Terryville, Perkins suffered another and more severe shock and was unable to work to the time of his death, October 24th, 1930. After the receipt of the letter of July 5th, there was no communication between the defendant and the plaintiff and her husband. Without their request, an employee of the defendant, two months before his death, brought Perkins' apron and personal effects from the factory to their home. The defendant's paymaster kept a list of employees, which included the name of Perkins, and on it was written in pencil "Sick, 6/14/27." Between the 10th and 17th of September, 1927, the word "through" was written in red ink opposite Perkins' name. His name also appeared on the defendant's payroll sheets with his wage rating, until the week beginning September 27th, 1927, but not thereafter. The defendant's employment manager kept a card index of employees, and at some time after the foregoing correspondence the paymaster inserted after the word "left," on the back of the card, the figures "1927." No cause of discharge or reason for leaving was noted on this card, nor did any records of

the defendant contain any notation of the discharge of Perkins for cause. None of these notations were brought to the attention of Perkins or his wife, and they never had knowledge of them or of the facts purported to be recorded by the defendant. On this state of facts, the court gave judgment for the plaintiff, and as stated in the defendant's brief, "The present case raises the single question . . . was the deceased in the defendant's 'employ' at the time of his death, within the meaning of that term as used in the certificate."

The defendant makes a threefold claim in its brief: (a) that the word "employ" as used in the certificate, means actual employment rather than a status of employment; (b) that the provision in the certificate for the payment of the benefit to one who has become totally disabled and permanently, continuously and wholly prevented thereby for life from engaging in any occupation, "took such a situation out of the provision for his death while in the employ of the company, even if it might otherwise have been deemed to be included within that phrase;" and (c) that the correspondence quoted must be treated as a dismissal of Perkins by the company, or at least an agreement that the relation of employer and employee had ceased.

The only construction we can put upon (b) is that the defendant contends that Perkins having become disabled and unable to do any more work, that fact automatically terminated his employment, with the result that the death benefit cannot now be claimed, though it is conceded that he could not have received anything from the disability provisions for the reason that its benefits are limited in terms to employees under sixty years of age, and Perkins was sixty-eight when he received the certificate. It is sufficient to say that this disability provision never was intended to have, and never did have, any relation to Perkins, since

it was confined to employees under sixty years of age. The provision can have no bearing upon the plaintiff's rights in the present action.

As to (a): The defendant cites the dictionary definitions of the word "employ," but these are of less importance than its actual intendment when used in this certificate. "In interpreting and construing contracts, certain elementary principles must be constantly kept in mind: (1) The intention of the parties is controlling, if ascertainable, and is governed by the situation of the contracting parties and the language employed. (2) Language must be given its ordinary meaning unless a technical or special meaning is clearly intended. (3) The contract must be construed as a whole, and in such manner as to give effect to each part, if reasonably possible." *Wood* v. *Employers' Liability Assurance Corporation,* 41 Fed. (2d) 573, 575, 73 A. L. R. 79, 83. If the word was used to indicate only actual work, it would follow that the benefit of the certificate could only be had if the employee died while at work; and if he died at any time after ceasing to work, there could be no claim upon the company in behalf of his beneficiary. In the former case, we decided that Tilbert remained an employee during the four weeks that intervened between the cessation of his work and his death. It is clear that neither party to this certificate intended such an automatic termination of the relation of employee and employer, but that the word was intended to indicate the status of the holder of the certificate in relation to the company. The word as here used, is intended to indicate a continuous right to the stated benefit until the contract relation is terminated by the withdrawal of the employee or discharge by the employer, with notice to the other party. *United States* v. *Nourse,* 27 Fed. Cas.

192, 195; *Abbott* v. *Davidson,* 18 R. I. 91, 25 Atl. 839; *Industrial Trust Co.* v. *Alves,* 46 R. I. 16, 124 Atl. 260.

As to (c): We held in the *Tilbert* case that this certificate of benefit was contractual in character. "A prime purpose of the granting of the benefits was to secure the good will, loyalty and efficiency of the defendant's employees and especially, through progressive premium placed on long-continued service, to minimize labor turn-over and obtain the advantage of experienced operatives. The attainment of these purposes constituted a benefit or advantage received by the defendant, who must be assumed to have requested it because it desired it and regarded it as beneficial to its interests. Tilbert remained in the employ of the defendant more than seven years after receiving the certificate. By so doing he manifested his acceptance of the promise, forebore his right to terminate the employment and engage elsewhere, and conferred the benefit which the defendant sought. . . . The essentials of a consideration are satisfied." *Tilbert* v. *Eagle Lock Co., supra,* at pages 361, 362. Likewise Perkins had worked for nearly eight years continuously for the company—as long as he was able to work for anyone— and had had the certificate for four years before he became ill; he had rendered the consideration for this benefit which the certificate purported to bestow. It is urged in behalf of this plaintiff that the right of dismissal reserved to the company by the certificate could not be exercised after the service had been rendered to the full extent of the employee's ability; that otherwise the company would in nearly all cases be able to escape payment by the simple expedient of terminating the employment when an employee became ill. We do not discuss this contention further for the reason that we are satisfied the correspondence between the parties cannot fairly be construed as evidence of an intent

on the part of either to terminate the employment. Mrs. Perkins' letter clearly shows that Perkins intended to remain an employee and continue his work, and the letter of Clow, so far from giving them the impression that he was dismissed, carried the suggestion that when the business of the company improved there would be work for him, though his presence was not needed at that moment because business was not very good. The continuance of Perkins' name as an employee on the books of the company for some weeks after the letter of July 5th, before making the entries referred to, is significant as indicating that the company itself did not consider Perkins' employment was terminated by the letter. Even if the company had the power under the dismissal clause in the certificate, to terminate the employment during the last illness of the employee and after he had faithfully rendered full consideration, and thus escape payment of the death benefit, a question which we do not decide, it is still true that such action must be shown to have been brought to the attention of the employee, in order to become effectual. We conclude that the employment continued to the time of Perkins' death. He had rendered full consideration for the benefit promised by the company, and the plaintiff is entitled to recover.

There is no error.

In this opinion the other judges concurred.