JOHN MYCEK *v.* THE HARTFORD ACCIDENT & INDEMNITY COMPANY.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued April 2—decided June 26, 1941.

*Charles A. Harrison,* with whom, on the brief, was *Milton G. Harrison,* for the appellant (plaintiff).

*Martin E. Gormley,* for the appellee (defendant).

JENNINGS, J. The stipulated facts, in so far as they are relevant to the decisive legal issue, may be summarized as follows: F. H. Woodruff & Sons, seed growers, were the owners of seven trucks used in their business. Among them was the truck which caused the injury in this case. All of the trucks were covered by a liability policy issued by the defendant. This policy insured the owners and any additional assured under the usual omnibus clause [1] against damages resulting from the operation of the trucks. F. H. Woodruff & Sons employed many men in Connecticut, principally in Milford. Andrew Vargo was foreman in charge of the work and the men. Incident thereto he was given custody and control of one of the trucks, his use thereof being limited, however, to the business

---

[1] "This policy is extended to cover as an additional assured any person while operating any automobile described in the Declarations or any person, firm or corporation legally responsible for its operation, where the disclosed and actual use of the automobile is for 'Pleasure and Business' or 'Commercial' purposes as defined in Item 8, and the automobile is being so used with the permission of the named assured. . . ."

of his employers during business hours. This use customarily included the transportation of men, materials and produce about the farm and between the different places where the business of his employers was carried on. At the close of the day's work it was his duty to return the truck to the Old Woodruff Farm, where he lived in a house furnished rent free by his employer, and leave it. At no time did he have permission to use the truck for his own convenience or pleasure.

At the end of the day's work on November 9, 1934, Vargo returned home in this truck and found that his wife and family had driven to Derby, about five miles away, to attend a moving picture. The trip had been made in an old Dodge car belonging to his wife. Fearing that she would have trouble with the car, he drove to Derby with two companions in the Woodruffs' truck without securing their permission to do so. He arrived there about 8:30, visited a tavern, a bowling alley and another tavern and started home about 10:45. The whole trip was purely an errand of his own. On his way back, he negligently ran the truck into a car in which the plaintiff was a passenger, inflicting serious injuries on the latter.

The plaintiff brought suit against Vargo and the Woodruffs and recovered a judgment against Vargo only for $6000. The judgment has not been paid and Vargo is bankrupt. The plaintiff thereupon brought this suit against the defendant under its liability policy claiming that, under its terms, the defendant should pay the judgment.

In order to recover, the plaintiff had to prove by independent evidence in this action that the terms of the policy contract afforded protection to Vargo as an additional assured. *Rochon* v. *Preferred Accident Ins. Co.,* 118 Conn. 190, 195, 171 Atl. 429; *Manthey* v.

*American Automobile Ins. Co.,* 127 Conn. 516, 520, 18 Atl. (2d) 397; *Brower* v. *Employers' Liability Assurance Co.,* 318 Pa. 440, 443, 177 Atl. 826. From the statement of facts it appears beyond question that Vargo had authority to operate the truck, but that his authority was limited to operating it in the business of his employer. He had no authority from his employer to operate it for his own purposes and it is equally clear that at the time of the accident he was not operating the truck in his employer's business but for a purpose of his own. The precise question is: Did the permission to operate the automobile in his employer's business bring Vargo within the terms of the policy when he was operating it, not in his employer's business, but for a purpose of his own? The answer to this question is to be found in the application of the terms of the policy, quoted above, to the stipulated facts.

The omnibus clause, as applied to this case, defines an additional assured as one operating the insured automobile with the permission of the named assured. While Vargo was intrusted with the car and the keys, his use was "limited" to the business of his employers and to business hours. The case therefore presents no problem of deviation from a permitted use because the use made of the car was never, even in its inception, permitted.

Under these circumstances the plaintiff, by the great weight of authority, is denied recovery. It is held that liability under an omnibus coverage clause of this character is not established when the use made of the car constitutes a complete departure from that for which permission was granted. The terms of this clause are broad and liberal but do not extend the protection of the policy to a person injured by the car regardless of who was driving it or the purpose for

which it was being used. In the following cases recovery was denied on somewhat similar facts and our *Dickinson* case, discussed below, was distinguished as involving a slight deviation from a permitted use: *Frederiksen* v. *Employers' Liability Assurance Corp.,* 26 Fed. (2d) 76; *Denny* v. *Royal Indemnity Co.,* 26 Ohio App. 566, 572, 159 N. E. 107; *Johnson* v. *Automobile Ins. Co.,* 131 Me. 288, 290, 161 Atl. 496; *Trotter* v. *Union Indemnity Co.,* 35 Fed. (2d) 104, 106; *Caldwell* v. *Standard Acc. Ins. Co.,* 98 Fed. (2d) 364, 366; *Johnston* v. *New Amsterdam Casualty Co.,* 200 N. C. 763, 158 S. E. 473. See also *Brower* v. *Employers' Liability Assur. Co.,* supra; *Nicholas* v. *Independence Indemnity Co.,* 11 N. J. Misc. 344; *Kazdan* v. *Stein,* 118 Ohio St. 217, 219, 160 N. E. 704; *Cypert* v. *Roberts,* 169 Wash. 33, 13 Pac. (2d) 55; *Indemnity Insurance Co.* v. *Sanders,* 169 Okl. 378, 380, 36 Pac. (2d) 271; *Dickinson* v. *Great American Indemnity Co.,* 296 Mass. 368, 6 N. E. (2d) 439; *Columbia Casualty Co.* v. *Lyle,* 81 Fed. (2d) 281, 284; 13-14 Huddy, Cyclopedia of Automobile Law (9th Ed.) 407-409; 72 A. L. R. 1375, 1398; 85 A. L. R. 20, 67; 126 A. L. R. 544, 550.

The plaintiff relies almost entirely on our case of *Dickinson* v. *Maryland Casualty Co.,* 101 Conn. 369, 125 Atl. 866, 41 A. L. R. 500, a three to two decision. In that case the owner gave a friend permission to take his car to go home to change his clothes. He started but was diverted from his purpose and the plaintiff was injured. The closing paragraph of the opinion (p. 381) reads as follows: "Louis Maisano gave permission to Riccitelli to take the car and operate it on the streets of New Haven, in order to go to his home. It would be an unreasonable curtailment of the permission granted, to hold that any deviation

or departure from the purpose indicated by Riccitelli in his request, annulled the permission and put Riccitelli in the position of one unlawfully using the car. Riccitelli undertook to take a friend in the car a mile toward his home in the northern part of the city, and another friend to his home near that of Riccitelli in the southern part of the city. These slight deviations from the route to his home, in a swiftly moving automobile, are too unimportant to have attached to them by construction the import of annulling the protective features of this insurance policy." This quotation shows that the case was regarded as one where permission for a specific use had been given but there had been a slight deviation, not of sufficient importance to annul the permission. Many of the cases citing the *Dickinson* case have distinguished it on that ground, as is noted above.

Of the other authorities relied on by the plaintiff, *Guzenfield* v. *Liberty Mutual Ins. Co.*, 286 Mass. 133, 190 N. E. 23, points out (p. 136) that both the wording of and the public policy underlying the compulsory insurance law of Massachusetts, under which the case was decided, call for a broad interpretation. *Peterson* v. *Maloney*, 181 Minn. 437, 232 N. W. 790, is practically on all fours with the *Dickinson* case and is distinguished on the same ground. *Stovall* v. *New York Indemnity Co.*, 157 Tenn. 301, 8 S. W. (2d) 473, 72 A. L. R. 1368; *Haeuser* v. *Aetna Casualty & Surety Co.* (La. App.), 187 So. 684, and *Drewek* v. *Milwaukee Auto Ins. Co.*, 207 Wis. 445, 240 N. W. 881, hold that if permission is once granted, the user is an additional insured regardless of the limits of the permission or the degree to which those limits have been violated. For the reasons stated, we do not agree with this doctrine and hold that Vargo was not an additional as-

sured because he was not driving the car with the permission of the named assured.

There is no error.

In this opinion the other judges concurred.