ETHEL V. McWILLIAMS v. AMERICAN FIDELITY COMPANY

BALDWIN, INGLIS, O'SULLIVAN, QUINLAN and WYNNE, Js.

Argued October 9, 1953—decided January 12, 1954

*William M. Greenstein,* with whom was *Josiah Greenstein,* for the appellant (plaintiff).

*Harry L. Nair,* with whom was *Robert E. Cohn,* for the appellee (defendant).

O'SULLIVAN, J. The plaintiff brought this action to recover money paid to the defendant in satisfaction of a promissory note. Her complaint alleged, in the first count, that the note was obtained from her by the fraud and misrepresentation of the defendant, and, in the second count, that she had executed and paid the note under the mistaken belief that she was indebted to the defendant. The trial court instructed the jury to disregard the second count and submitted the case to them on the first count only. The jury returned a verdict in favor of the defendant, and the plaintiff has appealed from the judgment rendered thereon. She claims error in the denial of her motion to set aside the verdict, in the charge, in rulings on evidence, and in the refusal to correct the finding.

We shall consider first the denial of the motion to set aside the verdict on the first count. It is obvious by their verdict that the jury refused to accept the evidence of the plaintiff as establishing the fraud upon which she relied. It is only in the most unusual circumstances that we will find error in the refusal of the trial court to set aside a verdict for the defendant, since it is almost impossible to determine

what evidence the jury accepted or rejected. Furthermore, in reviewing a ruling of the trial court in refusing to set aside a verdict, we are concerned primarily with the question whether the court abused its discretion. *Roma* v. *Thames River Specialties Co.,* 90 Conn. 18, 20, 96 A. 169. When the decision of the judge concurs with that of the jury, there is a strong argument for sustaining the action of the trial court. *Zullo* v. *Zullo,* 138 Conn. 712, 715, 89 A.2d 216. There is nothing in the record before us to indicate any abuse of discretion. The trial court did not err in denying the motion.

In the second count of her complaint, the plaintiff sought recovery on the ground of mistake. The court instructed the jury that the state of the evidence was such that she could not recover on this ground and that they were to disregard the second count. The plaintiff has treated this as an error in the charge and has so assigned it. It was, however, in effect a direction to the jury to return a verdict for the defendant on this count, and we shall consider it as such. For the plaintiff to recover on this count, it was necessary for her to establish, by evidence acceptable to the jury, that she had signed and paid the note under a mistake as to her rights and duties, that she was not under any moral or legal obligation to sign or pay it, and that the defendant could not, in good conscience, retain the money received from her in payment. *Gilpatric* v. *Hartford,* 98 Conn. 471, 480, 120 A. 317; *Spencer* v. *Consumers Oil Co.,* 115 Conn. 554, 562, 162 A. 23; *Monroe National Bank* v. *Catlin,* 82 Conn. 227, 231, 73 A. 3.

The jury could reasonably have found the following facts: John D. McWilliams, a building contractor, was unable to undertake some construction contracts because of an inability to secure the necessary

performance bonds. He communicated with Loring E. Miller, who represented the defendant. A conference ensued at which the plaintiff, McWilliams, Miller and Clark B. Bristol, executive vice president of the defendant, were present. The plaintiff, who is the wife of McWilliams, volunteered to put all of her assets behind her husband and to organize a corporation with him. She explained her financial status to the representatives of the defendant and later submitted to them a financial statement which indicated a net worth of $54,500, consisting almost entirely of equity in real estate.

On April 13, 1948, John D. McWilliams & Co., Inc., was organized. We shall hereinafter refer to it as the corporation. McWilliams conveyed to it all the equipment which he had been using in the construction business in payment of the shares of stock to be issued to him. The plaintiff agreed to pay $5000 in cash for the stock to be issued to her. McWilliams was elected president, and the plaintiff secretary and treasurer, of the corporation. Each owned forty-nine shares of the stock. Of the two additional shares issued, one was held by a daughter of McWilliams and the plaintiff and the other by their son-in-law. On April 13, 1948, the corporation applied to the defendant for the issuance of a performance bond on the construction of a school for the town of Hebron. The plaintiff and McWilliams signed an agreement, contained in the application for this bond, to indemnify the defendant against any loss. Relying upon this indemnity, the defendant executed a surety bond in the amount of $149,990 to the town of Hebron. The defendant thereafter wrote bonds for the corporation in connection with two other jobs. In each case, a signed indemnity agreement was obtained from the plaintiff.

In May, 1949, the corporation was the successful bidder for the construction of an armory in Mystic, and the defendant as surety executed a payment bond and a performance bond on the contract, with the corporation as principal. The plaintiff did not sign the indemnity agreement on the application for these bonds. The corporation defaulted in the performance of the contract. On August 1, 1950, Miller and Edward P. Cole, an attorney for the defendant, conferred with the plaintiff and McWilliams in regard to the unpaid claims and the failure to complete the Mystic armory contract. Miller told the plaintiff that the defendant was holding her for the loss, as she had signed an indemnity agreement for the Mystic job. It was suggested that she execute a note, but she declined to do so. She denied any liability on the indemnity agreement because she thought that she had not signed it. Miller asserted that she had. McWilliams assured her that Miller must know whether or not she had done so. At the time of the conference on August 1, Miller believed that the plaintiff had signed the indemnity agreement. In the latter part of August, he learned that she had not.

On or about August 10, 1950, a note, payable six months from date, in the amount of $9290.11, which represented the payments made by the defendant because of the default of the corporation, was sent by Cole to Miller, with the request that he have McWilliams and the plaintiff sign it. Miller delivered it to McWilliams, who asked that he be given time to meet his obligations to the defendant. The plaintiff had no knowledge that her husband had made this request. Prior to August 10, 1950, the equipment of the corporation was engaged in performing contracts at the University of Connecti-

cut and a hospital in Norwich. These had been undertaken by McWilliams under an agreement with one Neiderman, who was to provide the money for the payrolls. McWilliams expected to make a substantial profit on these jobs. He had written to the defendant on July 21, 1950, asking that time be given to him to make good the default on the Mystic job. The note, prepared after this request, was to be taken in lieu of the defendant's proceeding against the assets of the corporation. McWilliams carried the note around with him until October 13, 1950, when he and the plaintiff, after consultation with their attorney, executed it and returned it to the defendant. The plaintiff executed the note under the mistaken belief that she had signed the indemnity agreement, as stated by Miller, and that the note would give her more time to sell her house to raise the money necessary to make good her obligation on the indemnity contract.

In May, 1951, the defendant instituted suit upon the note and attached the plaintiff's property. The attachment was released after the plaintiff had paid $7500 in full satisfaction of the note. The money necessary to make payment was raised by the sale of the plaintiff's house. At the end of October, 1951, the plaintiff learned that she had not signed any indemnity agreement on the Mystic armory contract and demanded back the money paid, but the defendant refused to return it.

Directed verdicts are justified only in special cases. *Heringer* v. *Underwood Typewriter Co.*, 103 Conn. 675, 678, 131 A. 322. In reviewing the action of the trial court, we must examine the evidence in the light most favorable to the plaintiff. *Lesser* v. *Bridgeport-City Trust Co.*, 124 Conn. 59, 61, 198 A. 252. If more than one conclusion is reasonably

open to the jury, a verdict should not be directed. *Wood* v. *Wood,* 135 Conn. 280, 285, 63 A.2d 586. The jury could have found that the plaintiff signed the note only because she was under the mistaken belief that she had executed the indemnity agreement and was liable thereon. The defendant claims that she was under a moral as well as a legal obligation to execute the note because it was given to prevent the attachment of the corporation property. Whether the note was given for this purpose and whether the plaintiff was under a legal or a moral obligation to sign it and pay it were questions of fact for the jury under appropriate instructions. It was also for the jury to determine whether the defendant could in good conscience keep the money it had obtained by suing on the note and attaching the plaintiff's real estate. It is true that at the time Miller told the plaintiff that she had executed the indemnity agreement he was under the belief that she had. The defendant later discovered that she had not, but nevertheless it took the note, instituted suit and collected upon the note without disclosing the real facts to her. The trial court erred in not submitting the second count to the jury.

The plaintiff produced as a witness Cole, an attorney at law in the employ of the defendant when it was making its claims against her and when the note was prepared and signed. Cole testified that he was present with Miller at the conference with the plaintiff and McWilliams on August 1, 1950. He left the company thereafter. When he learned that the plaintiff had paid the note, he wrote her a letter in which he stated that she had not signed any indemnity agreement on the Mystic armory job. This letter was received in evidence. Subsequently, he sent her a second letter, which was offered and

marked for identification. At the trial, he testified that he knew at the time of the conference of August 1, 1950, that the plaintiff had not signed any indemnity agreement on the Mystic armory contract. In response to a question from the court, he repeated this testimony. Thereupon the court showed him the second letter and suggested that statements in it contradicted his testimony. He conceded that they did, in part.

At the end of the opening argument, the court dismissed the jury for the day and brought Cole's second letter to the attention of counsel for both parties. A discussion ensued. The court stated that upon its own motion it would read part of the letter to the jury. After counsel for the defendant had started his argument, the court interrupted him and read to the jury a statement from the letter to the effect that Cole had said nothing at the conference on August 1, 1950, concerning the plaintiff's signing any indemnity agreement because he was not sure whether she had signed such an agreement. The jury were instructed to consider this in connection with the credibility of the witness Cole. The plaintiff claims this was error. "Whether or not the trial judge shall question a witness is within his sound discretion. The extent of the examination is likewise within his sound discretion. Its exercise will not be reviewed unless he has acted unreasonably, or, as it is more often expressed, abused his discretion." *State* v. *Cianflone,* 98 Conn. 454, 469, 120 A. 347; 3 Wigmore, Evidence (3d Ed.) § 784. A judge is not an interlocutor presiding over a debate. He is a minister of justice. *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 501, 101 A.2d 500; *Strong* v. *Carrier,* 116 Conn. 262, 263, 164 A. 501; *Peiter* v. *Degenring,* 136 Conn. 331, 338, 71 A.2d 87. To this

end, he is empowered to exercise a reasonable discretion in the conduct of a trial. *Lawrence* v. *Abrams,* 121 Conn. 480, 482, 185 A. 414. Under the circumstances of this case, the interruption of the argument of counsel in order to reopen the case and submit for the jury's consideration pertinent testimony which had been overlooked by counsel was not an abuse of discretion. *State* v. *Chapman,* 103 Conn. 453, 479, 130 A. 899.

The plaintiff also offered, through the witness Cole, testimony as to what Cole reported to Bristol, the executive vice president of the defendant, concerning a conference with the plaintiff and McWilliams. Cole was then an attorney for the company. Generally, conversations or written communications between attorney and client are privileged and inadmissible in evidence. *Doyle* v. *Reeves,* 112 Conn. 521, 523, 152 A. 882; *Trachten* v. *Boyarsky,* 122 Conn. 465, 471, 190 A. 869. To be entitled to privilege, however, the proffered evidence must meet the qualifications prescribed by the rule. 8 Wigmore, Evidence (3d Ed.) § 2292. Because of the absence of sufficient data in the record, we are unable to dispose of the ruling otherwise than on the general principle stated. See *Attruia* v. *Attruia,* 140 Conn. 73, 79, 98 A.2d 532. If the ruling was erroneous, we are not in a position to find that it was harmful. The admission of the financial statement submitted to the defendant's representatives by the plaintiff was proper and requires no discussion.

It is unnecessary for us to consider the errors assigned by the plaintiff in that part of the finding which contains the claims of proof. The claims of proof serve the purpose of affording a basis for examining errors assigned in the charge. *State* v. *Buteau,* 136 Conn. 113, 126, 68 A.2d 681; Malthie,

Conn. App. Proc., § 85. We have regarded that portion of the charge in which error is claimed as, in effect, the direction of a verdict for the defendant on the second count, and in passing upon it we have considered all of the evidence. *Burley* v. *Davis,* 132 Conn. 631, 635, 46 A.2d 417.

There is error in part; the judgment is affirmed except as regards the second count of the complaint and as to that count only a new trial is ordered.

In this opinion the other judges concurred.