MARGARET LIBERO ET AL. *v.* THE LUMBERMENS
MUTUAL CASUALTY COMPANY

INGLIS, C. J., BALDWIN, WYNNE, DALY and SHANNON, JS.

Argued June 2—decided July 7, 1954

*James R. Greenfield,* with whom were *Vincent P. Dooley* and, on the brief, *Isadore P. Chaplowe,* for the appellants (plaintiffs).

*David M. Reilly,* with whom was *David M. Reilly, Jr.,* for the appellee (defendant).

INGLIS, C. J.  This action was brought, pursuant to the provisions of § 6191 of the General Statutes, to recover from the defendant, which had issued to George Bodnar an automobile liability policy, the amount of judgments obtained by the plaintiffs against James Harris by reason of his negligent operation of Bodnar's automobile. The court directed a verdict for the defendant and denied a motion to set the verdict aside.  From the judgment entered on the verdict the plaintiffs have appealed.

Upon the evidence, the jury might reasonably have found the following facts: By the terms of the

policy issued to Bodnar the defendant agreed to save the insured harmless from all liability imposed upon him by law for damages sustained by any person arising out of the operation of his automobile. The policy contained these provisions: "The unqualified word 'insured' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes the named insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured. The insurance with respect to any person or organization other than the named insured does not apply: . . . (c) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof. . . ." The policy was in force on July 4, 1944.

Leo J. Blumenfield was the owner of a garage in New Haven known as the Commercial Garage. James Harris was employed in the garage to do various jobs such as greasing cars, changing spark plugs and cleaning gas lines, but not to make any major repairs. July 4, 1944, being a holiday, the garage was closed except for parking. The parts and tools used for making repairs were locked up, and Harris, although he was on duty, did not have access to them. Harris' duties on that day were to clean up the mechanical department and the grease pit.

Bodnar kept his car stored in the Commercial Garage. On July 4, 1944, he found Harris at the garage and asked him to fix the oil pump of his car. Harris agreed and in the course of the conversation

said, "I may have to take this car out to test it to see if the pump works." Bodnar replied, "I don't know what is supposed to be done, you are the mechanic, and you should do it." It was agreed that the car would be ready for Bodnar about 4 o'clock in the afternoon. At about half-past four, Harris, driving Bodnar's car with a woman passenger, collided with another car about a mile from the garage. As a result of the collision the plaintiffs were injured. On January 14, 1948, they recovered judgments against Harris alone for damages totaling $7262.25. The judgments have not been satisfied.

The court grounded its direction of the verdict and its refusal to set the verdict aside on two conclusions, (1) that at the time of the accident Harris was not operating the car with the permission of Bodnar, the named insured, and (2) that in operating it Harris was the agent of a person conducting an automobile repair shop or public garage and hence came within the exclusionary clause of the policy. Consequently, the question presented on this appeal is whether the jury, on the evidence, were bound as a matter of law to reach either of those conclusions. *McWilliams* v. *American Fidelity Co.*, 140 Conn. 572, 578, 102 A.2d 345.

As regards the first conclusion, it must be pointed out that the extended coverage of the policy is only to the "actual use" at the time of the accident with the permission of the named insured. This means that where a car is entrusted to someone other than the named insured for a particular purpose, it must be in use in furtherance of that purpose at the time of the accident in order to come within the terms of the policy. *Laroche* v. *Farm Bureau Mutual Automobile Ins. Co.*, 335 Pa. 478, 483, 7 A.2d 361; *Hubbard* v. *United States Fidelity & Guaranty Co.*, 192 Tenn.

210, 217, 240 S.W.2d 245; *Hartford Accident & Indemnity Co.* v. *Peach,* 193 Va. 260, 265, 68 S.E.2d 520. In this particular, the provisions of the policy involved in the present case are radically different from those of the policy sued upon in *Dickinson* v. *Maryland Casualty Co.,* 101 Conn. 369, 379, 125 A. 866.

It is apparent that the jury might have found that Harris had Bodnar's permission to take the car out on the streets and to drive it as far as, in Harris' judgment, was necessary to determine that the oil pump was working properly. Accordingly, the only question on this phase of the case is whether as a matter of law Harris had gone beyond the scope of this permission—whether, in other words, at the time of the accident he was using the car exclusively for some purpose other than testing.

Harris himself did not testify. There was no direct evidence from him as to the nature of his use of the automobile at the time of the collision. There was, however, the evidence that it had been contemplated by him and Bodnar that he would drive the car to test it. There was also evidence that the hour when the accident happened was quite close to the time when he had estimated the work would be completed. From that evidence the jury might have reasonably inferred that Harris' main purpose in driving the car at the time of the accident was to make sure that the oil pump was working properly. The mere fact that he had a woman passenger with him would not necessarily negate such an inference. It follows that there was enough evidence to go to the jury on the question whether the actual use of the car was within the permission given by Bodnar. It was error for the court to decide that question as a matter of law. *Mycek* v. *Hartford Accident & Indemnity Co.,* 128 Conn. 140, 20 A.2d 735, relied upon by the defendant,

is clearly distinguishable. In that case, although the relevant provisions of the policy were substantially the same as those of the policy now before us, the trier had concluded as a matter of fact that the use of the motor vehicle being made by the driver was completely outside the permission given him by the named insured, and that conclusion was warranted upon the evidence.

We now turn to a consideration of the question whether the court was right in concluding, as a matter of law, that Harris was excluded from the coverage of the policy by reason of the provision that the insurance with respect to any person other than the named insured did not apply "to any person or organization, or to any agent or employee thereof, operating an automobile repair shop [or] public garage, . . . with respect to any accident arising out of the operation thereof." Without doubt, Harris was an employee of Blumenfield, who operated an automobile repair shop and public garage. That fact, however, does not offer a complete answer to the question before us. The real question is whether at the time of the accident Harris was operating Bodnar's car as the agent or employee of Blumenfield and the accident arose out of the operation of the garage.

The reason for the exclusionary provision in such policies as the one before us is, it has been said, that "[w]ithout any control from the owner as to the selection of the driver, the place driven, and the manner of driving, the repair man having this entirely in his control, the hazard was evidently too great for the indemnity companies to assume, and therefore that hazard was excluded." *Brower* v. *Employers' Liability Assurance Co.*, 318 Pa. 440, 448, 177 A. 826. The clause quoted must, therefore,

be interpreted to apply to the employees of persons operating an automobile repair shop or public garage only when they are acting within the scope of their employment. If a named insured turns his car over to an individual who happens to be an employee of a repair shop, but who does not himself operate the shop, for work to be done which is outside the scope of his employment, the exclusionary clause of the policy does not apply. 7 Appleman, Insurance, p. 194; see *Bosshardt* v. *Commercial Casualty Ins. Co.,* 124 N.J.L. 54, 56, 11 A.2d 49.

Whether, in the present case, Harris, in making the repairs to Bodnar's car and, in particular, in driving it upon the public highways, was acting within the scope of his employment by Blumenfield was a question of fact for the jury to decide unless the evidence on the subject was so clear that there could be no doubt about it. The jury might have found that even ordinarily it was not within the scope of Harris' employment to make such repairs as Bodnar requested of him and that, in particular, on July 4, with all the spare parts and tools of the garage locked up, he was definitely forbidden to do so. They might have found further that Bodnar knew all this and, therefore, when he engaged Harris to do the work, including the testing, it was contemplated by both of them that Harris was to operate on his own and not as an employee of Blumenfield. If they did so find, it would follow that the accident was not one which arose out of the operation of the repair shop or public garage. It was therefore improper for the court to conclude as a matter of law that the exclusionary clause of the policy applied to relieve the defendant of liability. It was error to remove the case from the consideration of the jury for that reason.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion WYNNE, DALY and SHANNON, Js., concurred.

BALDWIN, J. (dissenting). The majority concede that Harris was an employee of the Commercial Garage. They point out that the jury might have found, however, that at the time of the accident he was violating the instructions of his employer and by so doing was outside the scope of his employment. The word "employee" as used in the exclusion clause was plainly intended to indicate a general status in relation to the owner of an automobile repair shop, public garage, service station, or public parking place. *Perkins* v. *Eagle Lock Co.,* 118 Conn. 658, 663, 174 A. 77; *Arlandson* v. *Humphrey,* 224 Minn. 49, 52, 27 N.W.2d 819. "[T]he word employee has a flexible meaning depending upon the context and the object to be accomplished by the written instrument in which it appears." *Muise* v. *Century Indemnity Co.,* 319 Mass. 172, 174, 65 N.E.2d 98. As used in this instance, it means one who is working for an automobile repair shop, public garage, service station or public parking place. No question concerning the application of the doctrine of respondeat superior is involved. That this is so appears from the provision of the exclusion clause which states that the insurance does not cover an employee of an automobile repair shop or public garage "with respect to any accident arising out of the operation thereof." This phrase imposes a limitation upon the broad language which precedes it. It means, simply, that one who works for a garage is not denied coverage merely for that reason alone. He must be driving the car in

connection with the business of the garage to come within the exclusion.

The real question in the case is whether the accident was one "arising out of the operation" of the garage. As to that, the facts are conclusive. The garage was open twenty-four hours a day. Bodnar had kept his car there for two years, and the employees of the garage had frequently made repairs upon it. The repair department was closed on the day in question; nevertheless, Harris, an employee, was on duty, and Bodnar entrusted the car to him to be fixed. This whole sequence of events arose "out of the operation" of this public garage. To say that the jury could have found that Harris had disobeyed his employer's instructions, concerning which it does not appear that Bodnar had any knowledge, and had therefore temporarily ceased to be an employee is to overlook the obvious intent of plain words and to make the exclusion clause practically meaningless. *State, use of Tondi* v. *Fidelity & Casualty Co.,* 156 Md. 684, 688, 145 A. 182; see *Greenberg* v. *Lotz Asbestos Co.,* 109 Conn. 441, 446, 146 A. 834. The denial of coverage under the exclusion having been raised in the answer, the burden was upon the plaintiff to prove that the exclusion did not apply. *Manthey* v. *American Automobile Ins. Co.,* 127 Conn. 516, 519, 18 A.2d 397; *Rochon* v. *Preferred Accident Ins. Co.,* 118 Conn. 190, 195, 171 A. 429. The trial court was correct in directing a verdict for the defendant.