ANTHONY F. DIPALMA ET AL. *v.* HAROLD WIESEN ET AL.

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and MACDONALD, JS.

Argued May 3—decided June 26, 1972

*Gregory P. Patti,* with whom, on the brief, was *Paul V. McNamara,* for the appellants (defendants).

*Arthur Levy, Jr.,* with whom, on the brief, was *Irwin E. Friedman,* for the appellee (plaintiff Lillian Banks).

LOISELLE, J.   The plaintiff Lillian Banks, along with two other plaintiffs, brought this action to recover for injuries and damages which she had suffered while a passenger in a vehicle driven by a companion plaintiff.   She alleged that the collision, on February 3, 1967, between the vehicle in which she was a passenger and the vehicle operated by the defendant Eve C. Wiesen was caused by the latter's negligence.   During the course of the trial, the defendants admitted liability but contested the extent of damages.   A jury returned a verdict for the plain-

tiffs and the defendants appealed from the judgment for the plaintiff Lillian Banks, hereinafter called the plaintiff.

The defendants' first assignment of error which is pursued in their brief relates to the instructions of the court. The defendants requested that the court's charge to the jury include the following: "In assessing damages, a jury is not concerned with possibilities but with reasonable probabilities. In this case, there has been some testimony that permanency doesn't mean that the injury is permanent according to one of the plaintiffs' experts. Therefore, I direct you that there is not an adequate basis to determine that the plaintiff sustained a permanent injury of a lasting nature as a result of this accident." The court refused the request and left the matter of the permanency of injury to the jury.

With respect to the certainty with which an injury must be established before compensation may be awarded for it, an examination of the charge indicates that the court gave sufficient and proper instructions. The charge contains many references to the matter and includes the following: "[Y]ou must be satisfied with a reasonable degree of certainty that the results for which you are attempting to compensate are reasonably probable." See *Acampora* v. *Ledewitz*, 159 Conn. 377, 383, 269 A.2d 288.

The correctness of the court's refusal to instruct the jury as requested is determined by the claims of proof of the parties. Practice Book § 635; *Busko* v. *DeFilippo,* 162 Conn. 462, 294 A.2d 510. The unattacked offers of proof of the plaintiff disclose that an orthopedic surgeon, testifying on behalf of the plaintiff, stated that there was a reasonable, medical probability that the plaintiff will require medical treatment for the rest of her life; that there was

a reasonable, medical probability that the injuries which he described at the trial were caused by the accident; and that he estimated that the plaintiff had sustained a 40 to 45 percent disability of her total body as a result of the accident. Although these offers of proof are unattacked by any assignment of error, the defendants' claims of proof put the question of permanency of injury in dispute. The appendix to the plaintiff's brief demonstrates that the orthopedist's testimony concerning permanency was qualified only by his statement that no one could guarantee a prognosis. The request to charge assumed disputed facts and would have invaded the province of the jury had it been granted. See *State* v. *Vennard,* 159 Conn. 385, 399, 270 A.2d 837; *DeCarufel* v. *Colonial Trust Co.,* 143 Conn. 18, 20, 118 A.2d 798. The court was not in error in refusing to charge as requested.

The remaining assignment of error which is briefed by the defendants concerns the refusal of the court to order a capias after one of the plaintiff's physicians, having been served with a subpoena duces tecum on behalf of the defendants, did not appear. All that pertains to this assignment of error in the finding is included in the record in a rather long colloquy between the court and both counsel. From this colloquy the following may be inferred: Frank A. Serena, an orthopedic surgeon, testified at the trial for two days and, on completion of his testimony and cross-examination on a Friday, was excused by both counsel. On either the day he completed his testimony or the day after, the defendant served a subpoena duces tecum on Serena with an order to appear the following Tuesday and to bring his records pertaining to an accident which occurred on February 21, 1964, in which the plain-

tiff was involved. At the same time, the defendants served a subpoena on another physician, John F. Paget, who had treated the plaintiff for an accident which occurred in 1958. On Tuesday morning, neither physician appeared. Counsel for the defendants then requested that a capias be issued for Serena and the claimed error refers only to the denial of that request. At some time prior to Tuesday morning, Serena made it known that he would be engaged in previously scheduled surgery on that morning. From this colloquy it also appears that Serena stated in his cross-examination that he did not have his records pertaining to a 1964 accident, that he had a vague recollection of some permanent injury from that accident, and that he would not deny that he had assigned 30 to 35 percent disability to the plaintiff's cervical spine in connection with that accident. Counsel for the defendants indicated to the court that, in addition to the testimony relating to the permanency of injuries resulting from the 1964 accident, he wished to question Serena about the period during which he treated the plaintiff for the 1964 accident, the plaintiff's complaints at that time, "and so on and so forth."

On this representation, counsel for the plaintiff agreed to stipulate that Paget assigned 20 percent permanent partial disability to the plaintiff as a result of a 1958 accident. Counsel also agreed to stipulate that Serena might have given the plaintiff a 35 percent permanent disability to the cervical spine as a result of the 1964 accident and that Serena assigned a 5 to 10 percent disability to the lumbar spine and a 20 percent permanent disability to the cervical spine as a result of a 1966 accident.

It is the duty of every citizen to appear when commanded to testify to aid the courts in the ad-

ministration of justice. *Blodgett* v. *Cosgrove,* 117 Conn. 301, 306, 167 A. 925; 58 Am. Jur., Witnesses, § 9. It is a duty incident to citizenship which may not be ignored by one who believes that his time may be spent to better advantage, no matter how important he may think his time to be, even if he is one of a profession, whatever it may be. *Thomaston* v. *Ives,* 156 Conn. 166, 172, 239 A.2d 515; 97 C.J.S., Witnesses, § 16 (b). The fact that a witness has previously testified is not a legal excuse, in and of itself, to fail to obey a subpoena. See *Petrillo* v. *Kolbay,* 116 Conn. 389, 393, 165 A. 346.

If one is not warranted in refusing to honor a subpoena and it is clear to the court that his absence will cause a miscarriage of justice, the court should issue a capias to compel attendance. General Statutes § 52-143 does not, however, make it mandatory for the court to issue a capias when a witness under subpoena fails to appear; issuance of a capias is in the discretion of the court. The court has the authority to decline to issue a capias when the circumstances do not justify or require it. See *State* v. *McNamara,* 128 Conn. 273, 279, 22 A.2d 10. Judicial discretion is always a legal discretion, exercised according to the recognized principles of equity. *Thomas* v. *Thomas,* 159 Conn. 477, 480, 271 A.2d 62. "The action of the trial court is not to be disturbed unless it abused its legal discretion, and '[i]n determining this the unquestioned rule is that "great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness." *Dudas* v. *Ward Baking Co.,* 104 Conn. 516, 518, 133 A. 591 . . . .' *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352." *Camp* v. *Booth,* 160 Conn. 10, 13, 273 A.2d 714. In determining whether there has been an abuse of discre-

tion, the ultimate issue is whether the court could reasonably conclude as it did. *E. M. Loew's Enterprises, Inc.* v. *Surabian,* 146 Conn. 608, 611, 153 A.2d 463.

In the case at bar, the physician testified for two days; he was unequivocally excused by both parties; he was operating at the time for which he was subpoenaed to appear; his appearance was for the purpose of eliciting testimony about treatment for the 1964 accident, about which he had already testified, and not for the purpose of introducing evidence on a new subject beyond the scope of his direct examination, nor was there a showing or claim by counsel that he was restricted in his cross-examination in any way which would necessitate making him his own witness; the defendants' counsel, before excusing Serena, did not request that the court instruct him to return the following Tuesday with his records; and the plaintiff agreed to and did stipulate as previously stated.

Although the court stated: "I can't issue a capias for Dr. Serena," from the long colloquy referred to above, it is clear that its decision was not based on a belief that it had no power to do so but, rather, that its refusal was an exercise of discretion taking into consideration the existing circumstances. This court reviews the action of the trial court only as to whether that action cannot be supported in reason. The court did not act unreasonably; it did not, therefore, abuse its discretion in refusing to issue a capias for the arrest of Serena under the peculiar circumstances of this case. See *McWilliams* v. *American Fidelity Co.,* 140 Conn. 572, 580, 102 A.2d 345; *McKiernan* v. *Lehmaier,* 85 Conn. 111, 119, 81 A. 969; 53 Am. Jur., Trial, § 34. We hasten to add that, while the issuance of a capias is not manda-

tory, a witness' refusal to appear in response to a subpoena is in no way condoned; he is subject to fine and contempt and is liable in damages to the party aggrieved. General Statutes § 52-143.

There is no error.

In this opinion SHAPIRO and MACDONALD, Js., concurred.

HOUSE, C. J. (dissenting). I do not agree with the conclusion that the action of the trial court was, under the circumstances, reasonable and not an abuse of its judicial discretion.

As indicated in the majority opinion, the defendants admitted liability and so far as the plaintiff Lillian Banks was concerned the sole issue on the trial was the extent of her injuries and the amount of damages to which she was entitled. Her principal complaints of injury related to her lower back and the area of her cervical spine and right shoulder. She claimed that she had sustained permanent injury as a result of the accident which happened on or about February 3, 1967.

In 1958, she had had an accident while working for the Norwalk Hospital. She was treated by John F. Paget, a physician, and it was stipulated that as a result of this accident she sustained a permanent partial disability of her cervical spine. In 1964, she had another accident for which she was treated by an orthopedic surgeon, Frank A. Serena, and this accident also involved a permanent injury to the cervical spine. In 1966, she had another accident involving injury to the lumbar spine and the cervical spine. She was again treated for this injury by Serena who attributed to that accident a 20 percent loss of use of the cervical spine and a 5 to 10 percent loss of use of the lumbar spine. In the 1967 accident

which gave rise to the present suit and complaints of injury to the cervical spine and lumbosacral spine, she was again treated by Serena who estimated that as a result of the accident "the plaintiff had sustained a 40 to 45 per cent disability of her total body" and "will require medical treatment for the rest of her life."

It is obvious that in light of these circumstances the extent to which the most recent accident aggravated a preexisting condition was a material issue as to which the testimony of Serena was of paramount importance. He testified as a witness for the plaintiff. On cross-examination by the defendants as to the injuries sustained by the plaintiff in the 1964 accident, he testified that he had records in his office with respect to his findings and treatment of the plaintiff at that time but did not have the records with him in court. He had "a vague recollection" that there was a permanent condition claimed in that accident. On being pressed and in view of the fact that he did not have his records with him, he stated that "he couldn't deny" that he had assigned a 30 to 35 percent disability to Mrs. Banks' cervical spine as a result of that 1964 accident.

After this testimony from Serena, he was excused, the plaintiff rested and the court recessed until the following Tuesday with a direction to the defendants to be prepared to proceed with the case at that time.

Later the same day or the next day, the defendants' counsel had Serena served with a subpoena duces tecum to appear in court on Tuesday morning with the records concerning his treatment of Mrs. Banks following the 1964 accident. He also subpoenaed Paget for the same time. Neither physician

appeared in court in response to the subpoena. When court convened Tuesday morning, defense counsel informed the court of the situation and that he and counsel for the plaintiff had agreed to stipulate that Paget had assigned a 20 percent permanent partial disability to Mrs. Banks as a result of the 1958 accident but were unable to agree as to the full import of what Serena's testimony would be. Counsel, therefore, requested that the court issue a capias for Serena and grant a recess until 2 o'clock to give the sheriff an opportunity to produce Serena. The court refused to issue a capias. It then attempted to obtain a stipulation from counsel as to what testimony Serena would give if he did appear but was unsuccessful in the endeavor. The particular obstacle to agreement revolved around whether Serena had, in 1964, attributed a 35 percent permanent disability to Mrs. Banks' cervical spine as a result of the 1964 accident and if so whether to the left side of the neck or to the right side, which area was the area injured and involved in the present suit. At the conclusion of the discussion, the court stated: "He might have given her 35 per cent of the cervical neck in the '64 accident and 5 to 10 per cent of the lumbar spine from the '66 accident and 20 per cent of the cervical area for the '66 accident, am I correct? Mr. Friedman: Yes, Your Honor. The Court: That's the best you're going to be able to do. I'm not going to issue a capias for Dr. Serena." The court granted the defendants an exception to his ruling denying a capias.

In these circumstances, it is my opinion that the ruling of the court constituted harmful error. Obviously the extent and specific area of cervical injury sustained by the plaintiff in the 1964 accident was a question of major significance on this trial. Serena

had testified that he did have relevant records in his office but only a "vague recollection" at the time he testified. His testimony that under these circumstances he "couldn't deny" that he had assigned 30 to 35 percent disability to Mrs. Banks' cervical spine was certainly of questionable value in assisting the jury in determining what the true facts were. The ruling of the court deprived the defendants of a full and complete hearing of the case. "All material and relevant information which will assist the trier in determining the sum of money which will constitute . . . just compensation should, in justice to both parties, be made available to . . . [it]." *Thomaston* v. *Ives,* 156 Conn. 166, 174, 239 A.2d 515.

I do not mean to imply that the court should by means of a capias direct a sheriff to drag a physician from an operating room or his office and present him in court to testify, but I do believe that it was harmful error to deny a capias for Serena's appearance at the earliest practical time and to deny a recess until at least some inquiry could be made as to how soon that could reasonably be accomplished. "It is the duty of every witness, lay or expert, to respond to a subpoena and, unless privileged, to testify to factual matters relevant to a controversy." *Thomaston* v. *Ives,* supra, 172.

During recent years, there has developed a commendable high degree of understanding and cooperation between the legal profession and the medical profession, each recognizing the demands and requirements of the other profession and the obvious conflicts which are bound to arise from the obligation to care for the sick and injured and the duty to testify in court when called on to do so. This cooperation has been exhibited in a determined effort by

the bench and the bar to attempt to limit the required attendance of medical witnesses to as convenient and short a time as possible. As a result of this cooperation, the necessity for the issuance of subpoenas for medical witnesses has considerably lessened. Nevertheless, the burden has been placed squarely on trial counsel to produce medical testimony when it is needed. Practice Book § 228 expressly provides: "Counsel must recognize their responsibility to have medical testimony available when needed and shall, when necessary, subpoena medical witnesses to that end."

In the case at bar, it is apparent that counsel for the defendants did everything within his power and in accordance with the direction and rules of practice of the Superior Court to produce the witness and the records and material relevant evidence obtainable only from the subpoenaed witness. Under the circumstances, I cannot agree that the actions of the court did not constitute harmful and reversible error. I believe that the case should be remanded for a new trial.

In this opinion RYAN, J., concurred.