EDWARD JERZ *v*. DAVID G. HUMPHREY

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued November 5, 1970—decided January 7, 1971

*Louis M. Winer,* for the appellant (defendant).

*Joseph M. Brandon,* with whom were *William F. Tiernan, Jr.,* and, on the brief, *David E. FitzGerald, Jr.,* for the appellee (plaintiff).

THIM, J. The plaintiff brought this action to recover damages for injuries sustained by him when he was struck by an automobile operated by the defendant. A jury awarded the plaintiff $42,000 in damages and the plaintiff moved, under § 52-228b of the General Statutes, to set aside the verdict on the

ground that it was inadequate. The court set the verdict aside and ordered a new trial limited to the question of damages, unless the defendant, within one week from the date of the order, and the plaintiff within one week thereafter, stipulated that judgment may enter for the plaintiff in the amount of $65,000. The defendant has appealed.

The defendant claims that the court should not have set aside the verdict as inadequate, that the court erred in ordering a new trial limited to the issue of damages, that the court, in limiting the new trial to the issue of damages, violated the defendant's right to a trial by jury guaranteed by article first, § 19 of the constitution of Connecticut, and that the court erred in denying the defendant's motion to implead the defendant's insurer as a third-party defendant.

The question presented by the defendant's first claim of error is whether the court abused its discretion in setting aside the verdict. *Marin* v. *Silva,* 156 Conn. 321, 323, 240 A.2d 909; *Hook* v. *Dubuque,* 153 Conn. 113, 114, 214 A.2d 376; *Prosser* v. *Richman,* 133 Conn. 253, 256, 50 A.2d 85. "We need not restate the considerations underlying that question which are so clearly set forth in *Desmarais* v. *Pinto,* 147 Conn. 109, 110, 157 A.2d 596." *Marin* v. *Silva,* supra. For reasons hereinafter stated, we conclude that the defendant's first claim is dispositive of the appeal.

The accident in which the plaintiff was injured occurred on February 13, 1962. His age, at the time of the trial, was fifty-five years. As a result of the accident he sustained fractures of both bones of the right leg, a comminuted compound fracture of both bones of the left leg, a venous vascular deficiency, with discoloration, of both legs, an injury to the ulnar nerve of the right hand, a fracture of the

tenth and eleventh ribs and miscellaneous internal injuries. The left leg was displaced with a resultant overriding of the large bone of at least one-half inch. During the year after the accident the plaintiff was twice hospitalized for over a month, and during one hospitalization he underwent a split skin graft operation on his left leg. For ten months he wore a hip-to-toe covering cast on both legs. During this one-year period he also made frequent trips to the hospital for physical therapy and new casts. As a result of his injuries the plaintiff was out of work for fifty-four weeks.

At the time of the trial the plaintiff's medical specials totaled approximately $4300 and he had lost approximately $5000 in net wages. The jury award was for $42,000. Subtracting the medical specials and the loss of wages from the total award, the plaintiff was left with a $32,700 award covering mental and physical pain and suffering, both past and future; loss of earning capacity; restriction of physical activities, both past and future; and a possible future operation to replace the split skin graft with a pedicle graft.

There is no precise mathematical formula by which a jury can arrive at an award of damages for pain and suffering, or loss of earning capacity. *Nair* v. *Thaw,* 156 Conn. 445, 453, 242 A.2d 757; *Kekac* v. *New York, N.H. & H.R. Co.,* 149 Conn. 731, 732, 179 A.2d 832; *Sadonis* v. *Govan,* 132 Conn. 668, 670, 46 A.2d 895; *Nailor* v. *C. W. Blakeslee & Sons, Inc.,* 117 Conn. 241, 246, 167 A. 548. The determination is within the sound discretion of the trier. *Davis* v. *P. Gambardella & Sons Cheese Corporation,* 147 Conn. 365, 373, 161 A.2d 583.

Concerning both past and future mental and physical pain and suffering, there was ample evidence to

uphold a substantial verdict. The exact amount, however, to be allotted for this type of damages is imprecise. Also, the jury may or may not have found that the pain and suffering would continue into the future. The record fails to disclose any evidence which would require the jury to find that the plaintiff would undergo either future physical pain and suffering or future mental suffering, although there was evidence on which they could have so found.

Loss of earning capacity is also an uncertain area for the assessment of damages. Before the accident the plaintiff was a working building superintendent, receiving an average gross wage of $110 per week. At the time of the trial the plaintiff was grossing $163 per week as a nonworking building superintendent. There was testimony that the increase was consonant with the general increase in wages between 1962 and 1969. In determining whether there is a loss of earning capacity "[t]he essential question is whether the plaintiff's *capacity* to earn is hurt." *Lashin* v. *Corcoran,* 146 Conn. 512, 514, 152 A.2d 639. (Emphasis added.) The key word is "capacity." Wages before and after an accident are only material as guides to the trier. Testimony by one expert, the defendant's, which the jury could have believed, assessed the plaintiff's disability after the accident at a 10 percent permanent disability of the right leg and a 20 percent disability of the left leg. The same expert testified that a person with a 20 percent disability to an extremity could not perform prolonged standing, walking or jumping, that he would be limited in his climbing and balance, and that he would certainly be limited in his general athletic endeavors. He further testified that a person with this type of disability would have trouble doing construction work where it is necessary to work on

uneven ground, climb ladders or walk on steel girders, and further, a person with a 20 percent disability would be unable to do work that required him to stand for hours. Such a person would, however, "be able to do work that did not require him to stand for hours and work that he could sit part of the time." There was further testimony that the opportunity to obtain employment as a supervisory building superintendent was greater than it would be as a working superintendent. The plaintiff apparently has never been a construction worker, and such work is scarcely comparable to that of a building superintendent. The jury could reasonably have found that a working building superintendent falls within the category of jobs which do not require hours of standing and in which one can sit part of the time. They could have found that the plaintiff could continue as a working superintendent if he so desired, although with some limitations. Thus, based on the evidence, the jury could have found that the plaintiff's earning capacity was not appreciably diminished.

Restriction of physical activities, like pain and suffering, is an extremely uncertain area of damages, one in which it is quite impossible to assign values with any precision. This area of damages includes compensation for activities in which the plaintiff engaged, prior to his injury, which, as a result of that injury, are now foreclosed to him. Thus the value of the activities which are lost, and even the necessity of their being lost, are jury determinations. For example, the plaintiff testified that before the accident he went swimming frequently. He further testified that after the accident he had been swimming only once and at that time he did not remove his socks in order to hide his scars. The jury could

have found that his ability to swim was not impaired and that his embarrassment concerning his scars was unreasonable. In all, on the evidence, the award for restriction of physical activities need not have been substantial, although it could have been.

Finally, as to future medical expenses, the jury's determination must be based upon an estimate of reasonable probabilities, not possibilities. *Davis* v. *P. Gambardella & Sons Cheese Corporation*, 147 Conn. 365, 373, 161 A.2d 583; *Sheiman* v. *Sheiman*, 143 Conn. 222, 225, 121 A.2d 285. In his memorandum the trial judge treated these as necessary and proved medical specials. The defendant's expert testified that he would insist that the pedicle graft be done. The plaintiff's expert, on the other hand, testified that the likelihood of a future skin graft was "50/50." The trial judge's approach on this claimed item of damages was, therefore, improper. The first skin graft had withstood six years under working conditions. On the basis of the testimony, the jury could have found that the future medical expenses were only possibilities and thus could have awarded no damages to cover them.

"The ultimate test is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. *Hook* v. *Dubuque*, . . . [153 Conn. 113, 115, 214 A.2d 376]; *Sheiman* v. *Sheiman*, 143 Conn. 222, 223, 121 A.2d 285." *Marin* v. *Silva*, 156 Conn. 321, 323, 240 A.2d 909. In the instant case there is no claim that any incident occurred during the trial to influence the jury against the plaintiff. *Lupak* v. *Karalekas*, 147 Conn. 432, 435, 162 A.2d 180.

Great weight should be given to the action of the trial court and the presumption is that a verdict is set aside only for good and sufficient reason. However, the record must support that presumption and indicate that the verdict demonstrates more than poor judgment on the part of the jury. *Marin* v. *Silva,* supra; *Burns* v. *Metropolitan Distributors,* 130 Conn. 226, 228, 33 A.2d 131. While we do not attempt to substitute our judgment for that of the trial judge, we must determine whether the jury award was such that the trial judge could have properly substituted his judgment for that of the jury.

After the deductions of special damages there remains $32,700. The plaintiff's actuarial life expectancy at the time of the trial was nineteen years. While this amount may be somewhat low, it does not appear to us that it shocks the conscience or the sense of justice. Past pain and suffering is unquestioned and we assume that a sizable portion of the award was for that category of damages. As to future pain and suffering, loss of earning capacity, restriction of physical activities and future medical expenses, the testimony left the jury with much leeway in assessing damages. Clearly, some amount was requisite in most categories, but how large that amount was to be was dependent upon several determinations which were solely within the province of the jury. The jury award was sufficiently large to demonstrate that they were not swayed by passion, prejudice or corruption, and that there was no obvious mistake in their application of the law. Viewing the evidence in its entirety, it is clear that the plaintiff was severely injured and thus the evidence could support a sizable award, as envisioned by the trial judge. However, that evidence did not require such an award. A less sizable award, such

as that found by the jury, could also be supported by the evidence. At most, the jury exercised poor judgment.

A trial judge has broad legal discretion in setting aside a verdict. Such an action will not be disturbed unless that discretion has been clearly abused. *Gomes* v. *Zocco,* 155 Conn. 566, 569, 236 A.2d 90; *Zullo* v. *Zullo,* 138 Conn. 712, 715, 89 A.2d 216; *Slabinski* v. *Dix,* 138 Conn. 625, 628, 88 A.2d 115. We conclude that in the instant case there was a clear abuse of discretion. The jury award does not shock the conscience, it does fall within the limits of just damages and it should not have been set aside.

The defendant has conceded that we need not reach his assignment of error concerning his motion for permission to serve a third-party writ, summons and complaint. Since there is error on the defendant's first claim we also need not reach his remaining assignments of error.

There is error, and the case is remanded with direction to render judgment on the verdict.

In this opinion the other judges concurred.