UNITED SERVICES AUTOMOBILE ASSOCIATION and David G. Humphrey

v.

GLENS FALLS INSURANCE COMPANY.

Civ. No. 14689.

United States District Court,
D. Connecticut.

September 8, 1976.

William R. Moller, Wesley W. Horton, Regnier, Moller & Taylor, Hartford, Conn., for plaintiffs.

William L. Hadden, Clarence A. Hadden, Hadden, Taylor & Knott, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION

CLARIE, Chief Judge.

This suit had its origin in a state court automobile liability action [1] in which two insurance companies disputed which of them was primarily liable for insurance coverage on the accident. The plaintiff-carrier, United Services Automobile Association, (United Services) in its amended complaint [2] claims that not only was the defendant, Glens Falls Insurance Company, (Glens Falls) the primary carrier, but even if the Court found otherwise, the defendant's counsel, by not filing a timely reservation of rights in behalf of his client at the time of his appearance in the state court action, had waived the defendant's right to later refuse to accept liability. Furthermore, even though such a reservation of rights

---

1. *Jerz v. Humphrey*, 160 Conn. 219, 276 A.2d 884 (1971).

2. On the first day of the trial, October 21, 1975, the plaintiff, United Services, moved to amend the complaint. The defendant resisted, claim-ing that a new issue had been injected into the trial. (Tr. 59–65). The amendment was granted and the case continued to March 16, 17, and 18, 1976.

notice was sent by the defendants seven and one-half months later, the defendant's counsel continued his representation of the plaintiff, David G. Humphrey, for approximately five years, before actually withdrawing from the suit, and it is claimed that this conduct on the part of Glens Falls' counsel constituted a waiver of any claim of right it might have had to deny coverage under the policy.

The plaintiff's insured, Humphrey, joined with United Services as a co-plaintiff in this action claiming that the defendant insurer, Glens Falls, was guilty of ordinary negligence and wanton negligence, in its failure to properly defend the action and avail itself of favorable settlement opportunities accessible before trial. It is claimed that this deprived the plaintiff Humphrey of the quality of representation he was entitled to accept under the policy, and had he received proper representation, it might have permitted him to avoid additional trial expenses and the mental anguish which he experienced, from the ordeal of a trial. The plaintiff insurer seeks to recover special damages, including the amount of the state court judgment, $42,000, together with interest, costs and attorney's fees totalling $66,560.67. The individual plaintiff Humphrey also asks for special damages for his lost wages and expenses as a witness at the state court trial, *Jerz v. Humphrey*, 160 Conn. 219, 276 A.2d 884, plus general damages for his mental anguish. The Court, after a full trial on the merits, finds all the material issues in favor of the defendant and enters judgment accordingly.

### Facts

On February 13, 1962, the day of the accident, the plaintiff Humphrey was operating a Volkswagen automobile owned by his friend, Albert Keith Pierce. The factual circumstances under which he was driving the Pierce car that day are crucial to a consideration of the issue, as to who held the primary responsibility for the insurance liability coverage.

Prior to the day in question, Pierce owned a 1953 Volkswagen, which was in-sured for liability coverage by Glens Falls under Policy No. 35549, in the amount of $25,000. On or about January 24, 1962, he purchased a second Volkswagen and transferred through the State Department of Motor Vehicles the registration from the old 1953 vehicle to the newly acquired vehicle. Subsequently, on or about February 3, 1962, Pierce agreed to let Humphrey sell the 1953 Volkswagen and anything he received over $235.00 would belong to him. He drove the car down to Humphrey's home in Guilford, where he removed the registration plates and told Humphrey that the vehicle was unregistered and uninsured and could only be operated on the private way adjoining the latter's home property. It was made clear that the uninsured, unregistered vehicle could not be operated on any public highway.

At that same time, Humphrey owned a 1955 Volkswagen Micro-bus, which was insured in his name under a $100,000 liability policy with the plaintiff insurance company, United Services, under Policy No. N–190004–04. On the day of the accident, Humphrey tried to start his own Micro-bus to go to his place of employment, but it would not start. Thereupon, he illegally removed the registration plates from the "bus" and attached them to the unregistered Pierce vehicle and drove the Pierce car to his place of employment. It was about 5:30 p.m. that day, while on the way home from his job, that the accident happened. United Services immediately provided Humphrey with legal counsel for the defense of the motor vehicle criminal charges preferred against him; however, when the civil action was brought, it refrained from instructing its counsel to appear for its insured Humphrey, claiming that Glens Falls had the primary coverage and should assume its obligation to defend and also pay any hospitalization claims.

The injured pedestrian, Edward Jerz, commenced an action in the Connecticut Superior Court on June 4, 1962, claiming $100,000 damages, wherein he named both Humphrey and Pierce as co-defendants. His complaint not only alleged that Hum-

phrey was operating Pierce's motor vehicle when it struck him, but that he was operating it at that time, as the servant and agent of Pierce and in furtherance of the latter's business and with his consent, knowledge and permission. Counsel for the defendant Glens Falls advised his client that in light of the agency claims asserted in the complaint, it was obligated under Connecticut law, *Missionaries of Co. of Mary, Inc. v. Aetna Casualty & Surety Co.,* 155 Conn. 104, 230 A.2d 21 (1967), to provide Humphrey with a defense, even though its own investigation indicated that no such permission or agency existed authorizing Humphrey to operate Pierce's car on a public highway. (Plaintiffs' Exhibit 68).

Glens Falls' counsel, Pouzzner and Hadden, filed an appearance for Pierce on July 17, 1962, and an appearance for Humphrey on August 10, 1962. When the law firm did so, on August 8, 1962, they had already advised Glens Falls they expected the Company to send a "reservation of rights letter" to Humphrey. (Plaintiffs' Exhibit 65). However, such a letter was not in fact given to Humphrey until approximately seven and one-half months later. United Services did not authorize its counsel to appear for Humphrey notwithstanding the fact, that it knew the ad damnum clause in the pending complaint claimed $100,000 damages and Glens Falls, even if liable, held a maximum liability coverage of only $25,000 for bodily injury and $1,000 for medical payments.

As the state action progressed toward trial, a pre-trial hearing was held in chambers with the presiding judge. The state court file discloses (Plaintiffs' Exhibit 45) that on January 16, 1968, the plaintiffs' settlement demand was $37,500, but no settlement offer was made, because Glens Falls denied coverage and appeared under a reservation of rights.

The record further discloses that the pre-trial judge's recommendation of settlement of the case at that time was $30,000. United Services, the plaintiff insurer, did not instruct its counsel to file an appearance, nor did it take any active part in the law

suit, other than to request Glens Falls' counsel to keep them advised of developments in the case. It did instruct its counsel to review the court file from time to time and keep abreast of the case's progress through the court. Glens Falls' counsel wrote to Humphrey on September 4, 1968 to acquaint him with the fact that other legal procedures were available to him to protect against loss, because of any judgment which might be recorded against him, (Plaintiffs' Exhibit 45), but that their firm had not been retained to do this.

At that point in the state case, a most unexpected event occurred, which caused this suit to become a unique action. The plaintiff Jerz on October 3, 1968, moved for permission to drop Pierce as a party defendant altogether; and to file. an amended complaint solely against defendant Humphrey, United Services' insured. The motion was granted by the court and a substituted complaint was filed, which omitted all reference to Pierce's ownership of the vehicle. The amended complaint also made no claim that Humphrey was operating the vehicle with Pierce's permission or that he was doing so as the latter's agent or in furtherance of his business. A consent withdrawal of the action against Pierce only was filed and Glens Falls' counsel then moved for permission to withdraw from the case. After due notice was given to Humphrey by registered mail (Plaintiffs' Exhibit 45) and a hearing held on the merits, the court granted the motion on November 8, 1968 and this was consummated on November 20, 1968.

Thereupon on July 8, 1969, United Services instructed its counsel to appear in the case for its insured Humphrey and this was done. On July 3, 1969, the latter counsel sought to implead Glens Falls as a third party defendant, claiming that their refusal to provide a defense was wrongful and that they should be held liable for any judgment as well as the costs and expenses of defending the case. However, after a hearing, the state court denied the motion.

The state court case, *Jerz v. Humphrey,* 160 Conn. 219, 276 A.2d 884, proceeded to

trial before a jury and a verdict of $42,000 damages was entered against Humphrey. An additur was then ordered by the presiding judge to make a total plaintiff's judgment of $65,000. The Supreme Court thereafter reversed the additur and ordered the reinstatement of the original verdict. (160 Conn. 219, 276 A.2d 884.)

Under this unique set of circumstances, the plaintiffs now seek to recover over against Glens Falls, for the amount of the state court judgment, plus costs, attorney's fees and interest paid on behalf of Humphrey in the *Jerz* case, totaling $55,227.89, plus interest on $45,747.65 from May 3, 1971 to May 25, 1971 and interest on $55,227.89 from May 26, 1971 to the present date.

## Issues

1. Was the plaintiff Humphrey operating the Pierce car with Pierce's permission on February 13, 1962, when he was driving the vehicle on the public highway to and from his place of employment.

2. Did Glens Falls' initial defense of the suit without filing simultaneously a reservation of rights, and its subsequent withdrawal after the complaint was amended, waive its right to deny liability coverage to Humphrey and thus become liable to United Services for reimbursement.

## Jurisdiction

While plaintiff Humphrey is a citizen of Maryland, United Services Automobile Association is a Texas corporation and Glens Falls is a New York corporation; both of the latter corporations have their principal offices and places of business outside Connecticut. Diversity jurisdiction exists and the amount in controversy is properly within the jurisdiction of this Court. 28 U.S.C. § 1332.

■ Connecticut contract law controls the validity and construction of the insurance policies issued to Humphrey and Pierce, respectively. Both were residents of this state, when they acquired the coverage intended to insure the vehicles owned and registered to each of them within the state. The primary operative effect and performance of the respective contracts was intended at the time to be within the state.

"The general rule is that the validity and construction of a contract are determined by the law of the place where the contract was made. But if the contract is to have its operative effect or place of performance in a jurisdiction other than the place where it was entered into, our rule is that the law of the place of operative effect or performance governs its validity and construction." *Jenkins v. Indemnity Ins. Co.*, 152 Conn. 249, 253, 205 A.2d 780, 782–783 (1964).

## Discussion of the Law

When Humphrey illegally put the registration plates of his Volkswagen Micro-bus on Pierce's car without authority on the morning of February 13, 1962, he not only committed an illegal act under state law, but he used the car to travel on the public highway to his place of employment without Pierce's permission. Pierce made it very clear to him when he left the vehicle at Humphrey's house, and entrusted him with the car and the keys, that the car was unregistered and uninsured and was not to be used off of the private area surrounding Humphrey's home. (Tr. 226, 221–222).

The Glens Falls policy (Plaintiffs' Exhibit 1) provides under Part I, Coverage C:

"Persons Insured: The following are insureds under the Liability and Medical Expense Coverages:

(a) with respect to an owned automobile,

(1) the named insured,

(2) any other person using such automobile to whom the named insured has given permission, provided the use is within the scope of such permission."

■ Humphrey's operation of Pierce's vehicle was while carrying out a clear mission of his own; it was not within the scope of any permission granted by Pierce. Hence it could not have been within the scope of the Glens Falls' coverage provisions, as hereinbefore quoted under the terms of the policy. His use of the car that day was for his own personal convenience in getting to and from

his place of employment; he was on an errand of his own. Had he a prospective purchaser at the plant where he worked and to whom he proposed to demonstrate the car, that might at least have created a colorable and arguable circumstance. However, Humphrey admitted that this was not the case.

Under similar circumstances where an employee had limited permission to drive his employer's vehicle during business hours, and he drove it on a mission of his own after work, the Connecticut Supreme Court denied coverage. *Mycek v. Hartford Accident & Indemnity Co.*, 128 Conn. 140, 145–146, 20 A.2d 735, 737 (1941). There the court stated that:

"  .   .   .   [O]ther authorities relied on by the plaintiff  .   .   .   hold that if permission is once granted, the user is an additional insured regardless of the limits of the permission or the degree to which those limits have been violated. For the reasons stated, we do not agree with this doctrine and hold that [the plaintiff] was not an additional assured because he was not driving the car with the permission of the named assured."

The present case does not present the problem of deviation from a permitted use, as in the case of *Dickinson v. Maryland Casualty Co.*, 101 Conn. 369, 125 A. 866 (1924), because the use made of the Pierce car was never, even in its inception, authorized or permitted. Humphrey in using the vehicle violated the criminal motor vehicle law by unlawfully transferring his registration plates and operating on the public highway what was in fact, an unregistered vehicle. Pierce could never have anticipated such intervening criminal conduct by Humphrey; and certainly it was not within the scope of any permissive use authorized by the named insured.

This position is further substantiated in *Freeman v. Nationwide Mutual Ins. Co.*, 147 Conn. 713, 716–717, 166 A.2d 455, 457 (1960), where the court said:

" 'Actual use,' as used in a policy similar to the one in issue, has been interpreted by us as meaning that where a car is entrusted to someone other than the named insured for a particular purpose, it must be used in furtherance of that purpose at the time of the accident in order to come within the terms of the policy. *Libero v. Lumbermens Mutual Casualty Co.*, 141 Conn. 574, 577, 108 A.2d 533."

On the other hand, the liability coverage provisions in the United Services policy, (Plaintiffs' Exhibit 24) clearly provided coverage to Humphrey in his operation of this uninsured vehicle under Part I–Liability, Definitions, it states:

"  .   .   .   'temporary substitute automobile' means any automobile or trailer, not owned by the named insured, while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

Counsel for both parties in their presentation of this case agreed, that if it were proven that Pierce had in fact, given Humphrey permission to operate his car on the public highway to and from his work on the day in question, then Glens Falls would have been the primary carrier and United Services would have been the secondary carrier for the overage liability for any recovery above the $25,000 maximum Glens Falls coverage, plus the $1,000 for medical payments.

*Waiver Issue*

A second phase of liability, which the plaintiffs assert against the defendant Glens Falls, is that it is now precluded from denying primary liability coverage for this accident, because by its late filing of a reservation of rights it has waived this defense. Counsel for Glens Falls appeared in the state court suit in defense of Humphrey (its omnibus clause insured), on August 10, 1962. The first notice of reservation of rights was given to Humphrey on March 29, 1963, about seven and one-half months later. The plaintiffs now claim that when Glens Falls withdrew its defense of Humphrey on November 21, 1968, when the state court plaintiff Jerz filed a substituted

amended complaint omitting Pierce altogether as a party defendant, Glens Falls by its own prior conduct had already waived its right to deny coverage to Humphrey. The plaintiffs contend that the defendant is now liable for the state court judgment, the costs, interests, attorney's fees, and all expenses, because Glens Falls unlawfully withdrew from Humphrey's defense.

Under Connecticut insurance law, if the allegations of the plaintiff's complaint in any action against a named insured state facts which appear to bring the injury within the policy coverage, the insurance company has a legal duty to defend; and this is so, even when the insurer's own investigation may determine the true facts to be otherwise.

In the case of *Missionaries Co. of Mary, Inc. v. Aetna Casualty & Surety Co.,* 155 Conn. 104, 110, 230 A.2d 21, 24 (1967), the court said:

"The question whether the defendant had a duty to defend the action . . . depends on whether the complaint in that action stated facts which appeared to bring [the plaintiff's] claimed injury within the policy coverage. *Andover v. Hartford Accident & Indemnity Co.,* 153 Conn. 439, 442, 217 A.2d 60; see, for a collection of cases on this subject, note, 50 A.L.R.2d 458, 468 § 6. The duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured. *Smedley Co. v. Employers Mutual Liability Ins. Co.,* 143 Conn. 510, 516, 123 A.2d 755. This general rule is practically universally recognized."

Under the allegations of the original complaint in *Jerz v. Pierce and Humphrey,* the state court suit, Pierce's insurer, Glens Falls, was required by law to furnish a defense not only to Pierce, as its named insured, but also to Humphrey as its omnibus insured. The reason for this is because of the assertion in the Jerz complaint that Humphrey was operating Pierce's vehicle at the time of the accident "as the servant and agent of Pierce and in furtherance of the latter's business and with his consent, knowledge and permission." However, such an allegation of course, must be proven, and standing alone does not automatically make the additional party an assured under the policy for indemnification purposes, until that relationship is established.

Waiver has generally been described as the intentional relinquishment of a known right. Certainly when Glens Falls appeared for Humphrey under its omnibus coverage clause, it was acting only because the law required that it do so. Failure on its part to defend against the allegations of agency and permission would have, as a matter of law, made it liable for any judgment, costs and expenses, regardless of the plaintiff's lack of ability to prove liability against the defendant's named insured, Pierce. The real question is whether or not when Glens Falls did give Humphrey a notice of its liability reservation seven and one-half months later, on March 29, 1963, did the delayed notice under all the circumstances, prejudice Humphrey or his insurer, United Services. The Court is of the opinion that it did not.

From the moment the Humphrey accident was initially reported to his own insurance carrier, United Services, that insurance company assigned its own retained counsel to represent Humphrey in the criminal action; the same legal firm continued to remain off-stage in the wings throughout the controversy as an observer and suggested that Humphrey should look to Glens Falls for primary coverage, because he was an omnibus insured, provided it could be proven that he was driving, at the time of the accident, with Pierce's permission. It was clearly United Services' business strategy throughout, in the handling of this litigation, to unload the responsibility for primary coverage on Glens Falls, if it were at all legally possible to do so. In fact had agency or permissive use been proven, as it was alleged in the Jerz original complaint, that would have been a natural and logical sequence.

However, a unique factual circumstance intervened. On October 3, 1968, the plain-

tiff Jerz withdrew his original complaint by substituting in its stead an amended complaint, which alleged a different set of facts and conclusions. It named Humphrey as the lone defendant and changed the whole character of the original suit, which had been pending since June 4, 1962. Thus Pierce, Glens Falls' insured, was no longer a party defendant in the new complaint; no allegations of agency or permissive use were claimed against him.

The substituted complaint, in thus failing to allege any inter-relationship between Pierce and Humphrey destroyed the "omnibus assured" obligation of Glens Falls toward Humphrey, which had originally forced that company to appear in the latter's defense. After proper notice and a court hearing, Glens Falls' counsel was authorized by the court's order to withdraw their representation of Humphrey and United Services' counsel promptly appeared in their stead.

Throughout the six-year period in which the action had been pending, United Services' counsel regularly checked through the official court file in the Clerk's Office to observe the progress of the case and report to the insurer. They were aware that at the pre-trial conference on January 16, 1968, the plaintiff's demand for settlement was $37,500; while the court estimated $30,000 to be a fair settlement value. They were aware too that Glens Falls had made no offer and had no intention of making any, because their reservation of rights had been on file since March 29, 1963, five years before the filing of the substituted complaint. Knowing all this, United Services volunteered no offer of settlement; it refrained from formally appearing in the case, even though it knew of the $75,000 overage claimed, above the Glens Falls maximum liability policy of $25,000.

The plaintiffs would represent that Glens Falls failed in its duty to effect a reasonable settlement of the case, knowing all the while that it could only do so by offering and paying out its own moneys on a liability which it had denied and had previously given notice of a reservation of rights.

Neither of the companies concerned, nor the assured, took any other affirmative steps by commencing a declaratory court action or otherwise, to determine which of them should assume the primary insurance coverage obligation.

The Court finds that considering the totality of the period and the circumstances during which this state court action was pending, Glens Falls appeared in this case for Humphrey only as a matter of compulsory legal obligation from August 10, 1962 to the date of the substituted complaint on October 3, 1968. Glens Falls' filing of its reservation of rights on March 29, 1963, seven and one-half months after filing its appearance for Humphrey, was not an unreasonable delay under all of the circumstances. It did not unlawfully harm or prejudice the position of United Services in any material way, to prevent its effecting a more favorable result in the suit. As the Connecticut Supreme Court so aptly said in *Keithan v. Massachusetts Bonding & Ins. Co.*, 159 Conn. 128, 141–142, 267 A.2d 660, 667 (1970);

"As the court noted in *Smith v. Ins. Co. of State of Pa.*, supra, La.App., 161 So.2d 903, 919: 'If the defendant is neither the named insured nor an omnibus insured there is clearly no obligation to defend regardless of the allegations of the petition and irrespective of the soundness or groundlessness of the claim asserted. To hold otherwise is to completely erase from the policy the qualifying phrase 'against the insured,' contained in Clause II(a) . . . .' Also, as stated in *Travelers Ins. Co. v. Tymkow*, 87 N.J.Super. 107, 113, 208 A.2d 176, 179–180: 'It can certainly not have been the intention of the named assured . . . to provide insurance benefits for any and all alleged principals that an injured third party could dream up.'

"We find the logic and reasoning of such cases as the *Smith* case persuasive under the circumstances of the present case. Since Keithan was not an insured under the Mass. Bonding policy and since the contract duty of the insurer was lim-

ited to providing a defense to any suit 'against the insured,' Mass. Bonding performed its full contract duty in providing a defense to Porto, its insured, and was under no contract duty to provide a defense for an uninsured stranger to the contract such as Keithan, simply because a third party had alleged facts which, if true, would have given Keithan the status of an insured."

So also in this unique factual sequence of circumstances, simply because the allegations of the original suit forced Glens Falls, as a matter of law, to defend Humphrey originally, United Services cannot expect it to keep Glens Falls permanently boxed in to the liability, when a substituted complaint changes the relationship and responsibility of the insuring parties under the respective contracts. The Court finds that United Services was not prejudiced by the Glens Falls action in withdrawing its representation of Humphrey, after proper notice and hearing was had and with the court's approval.

Appendix "A" shall constitute the findings of fact in this case and is incorporated herein by reference. The foregoing opinion shall constitute the conclusions of law required to be filed by the Court, pursuant to Rule 52(a), Fed.R.Civ.P.

Judgment may enter on all issues for the defendant against both plaintiffs. SO ORDERED.

Dated at Hartford, Connecticut, this 8th day of September, 1976.

### APPENDIX "A"

### FINDINGS OF FACT

1. The defendant, Glens Falls Insurance Company (Glens Falls) had an automobile liability insurance policy No. 35549, which was in effect on February 13, 1962 with Albert Keith Pierce as the named insured.

2. Albert Keith Pierce owned a 1953 Volkswagen, No. 1–0519855, on that date.

3. On February 13, 1962, the plaintiff, David G. Humphrey was the driver of the above car when he was involved in an accident with a pedestrian, Edward Jerz.

4. About ten days or two weeks before February 13, 1962, Pierce drove his 1953 Volkswagen to Humphrey's home in Tuttles Point in the Town of Guilford.

5. Prior to the time Pierce had the car for sale at his home in Newtown, Connecticut and decided that chances for a sale might be better in the area where Humphrey lived and by mutual agreement turned the car over to Humphrey to sell.

6. Upon turning the car over to Humphrey, Pierce removed the license plates from the car, assisted by Humphrey, and told Humphrey the car was uninsured.

7. At that time Humphrey knew and was told the car was unregistered and uninsured and not to be used off of the private area surrounding Humphrey's home.

8. Roads adjacent to and surrounding Humphrey's home for a distance of between one and a half and two miles were private roads.

9. At the time he left the car at Humphrey's home, Pierce mentioned to Humphrey that the car was unregistered and uninsured and he, Humphrey, should not take it away from there.

10. The only reason the car was turned over to Humphrey was so that Humphrey could attempt to sell and/or sell it to a purchaser. Pierce felt that there was a better market for his car along the shore and therefore Pierce and Humphrey agreed that Humphrey would attempt to sell it and could keep any proceeds over $235.00.

11. On the morning of February 13, 1962, Humphrey, who was employed in a factory in Meriden, Connecticut, attempted unsuccessfully to start his own Volkswagen automobile for the purpose of driving to work.

12. Unable to start his own motor vehicle and not wishing to use another motor vehicle owned by him, because his wife wanted to use it that day, Humphrey removed the license plates from his own Volkswagen placed them on Pierce's Volkswagen and drove to his place of employment.

13. Plaintiff Humphrey worked all that day at his place of employment and upon the conclusion of his day's work, started to return to his home in Guilford by driving the Pierce Volkswagen.

14. On his way home while passing through the Town of North Branford, the motor vehicle he was operating struck and seriously injured Edward Jerz.

15. Humphrey's purpose in using the Pierce Volkswagen on the day of the accident was solely and exclusively for the purpose of transporting himself from his home to his place of employment and to return to his home after his day's work was completed.

16. The trip between Humphrey's home and his place of employment was in no way directly or indirectly connected with the sale or attempted sale of the motor vehicle.

17. At no time did Pierce, expressly or impliedly give Humphrey permission to operate the motor vehicle on a public highway in the State of Connecticut.

18. At no time did Pierce give Humphrey permission to operate the motor vehicle for his personal objectives.

19. Plaintiff Humphrey promptly reported the accident to the McGinn Company, Connecticut representative of the plaintiff United Services Automobile Association, and said representative referred Humphrey to the firm of lawyers who represented United Services in the Connecticut area and a member of that firm represented Humphrey in the prosecution of Humphrey by the State of Connecticut on motor vehicle violation charges, including the charge of operating an unregistered motor vehicle on a public highway.

20. Charges for the legal services rendered plaintiff Humphrey in the case of *State of Connecticut v. Humphrey* were paid by plaintiff United Services.

21. On the date of the accident, February 13, 1962, plaintiff United Services' policy of liability insurance in the amount of $100,000 coverage (Plaintiffs' Exhibit 24) by its terms covered plaintiff Humphrey's liability on account of the accident of February 13, 1962.

22. On said date defendant Glens Falls Insurance Company had in force and effect a policy of insurance (Plaintiffs' Exhibit 1) covering Albert Keith Pierce, the owner of the Volkswagon involved in the accident, for liability arising out of the operation of said Volkswagon in the amount of $25,000.

23. In said Glens Falls' policy Albert Keith Pierce was the named assured and there was a provision as follows:

"Persons Insured: The following are insureds under the Liability and Medical Expense Coverages:

(a) With respect to an owned automobile,

(1) The named insured.

(2) Any other person using such automobile to whom the named insured has given permission, provided the use is within the scope of such permission."

24. Upon learning of the probable existence of said Glens Falls' policy, the plaintiff United Services, its servants and agents, advised and caused plaintiff Humphrey to report said accident to defendant Glens Falls.

25. Both plaintiff United Services and defendant Glens Falls investigated said accident.

26. Edward Jerz brought an action returnable to the Superior Court for New Haven County the first Tuesday of July, 1962 to recover damages because of injuries sustained in the accident of February 13, 1962. (Plaintiffs' Exhibit 4).

27. In that action Albert Keith Pierce and the plaintiff Humphrey were named defendants and damages in the amount of $100,000 was claimed.

28. Plaintiff Humphrey was sued as the operator of the motor vehicle which struck and injured Jerz and as to Albert Keith Pierce, it was alleged that he owned the automobile and that Humphrey was operating the car with the consent, knowledge and permission of Pierce, as the servant and agent of Pierce, in furtherance of his business.

29. Aetna Casualty & Surety Company, as plaintiff, brought an action against said Humphrey and Pierce, as defendants, returnable to the Eighth Circuit Court of the State of Connecticut, on the third Tuesday of February, 1963, which action arose out of the accident of February 13, 1962 and claimed damages of $2,000 because plaintiff Aetna had paid Jerz $1,767.43 under the terms of an insurance policy issued by Aetna to Jerz and in said action Aetna claimed to be subrogated to the rights of Jerz against Humphrey and Pierce.

30. This action by Aetna alleged Humphrey was operating an automobile owned by Pierce and was operated by Humphrey as the agent, servant and/or employee, and with the permission of Pierce.

31. The action by Aetna was transferred to the Superior Court of New Haven County but was not prosecuted by Aetna because the damages claimed by Aetna were included in the damages claimed by Jerz in this action and if Jerz recovered damages in his action, he would reimburse Aetna for its expenditures.

32. The law firm of Pouzzner and Hadden, at the direction of defendant Glens Falls, entered its appearance for the defendants in the action brought by Aetna.

33. In the action brought by Jerz, at the direction of defendant Glens Falls, the law firm of Pouzzner and Hadden entered its appearance for Pierce on July 17, 1962 and for Humphrey in August 1962.

34. Thereafter, Pouzzner and Hadden competently represented the defendants in the action of *Jerz v. Humphrey.*

35. The only demand made by the plaintiff Jerz for settlement purposes was $37,500. No offer was made by Pouzzner and Hadden because defendant Glens Falls took the position that its policy of insurance did not cover the plaintiff Humphrey because he was not using the motor vehicle of Pierce with the permission of Pierce within the scope of such permission.

36. In July and August, 1962, Glens Falls was alerted by Pouzzner and Hadden to the need for sending out a reservation of rights letter at that time. (Plaintiffs' Exhibits 65 and 68).

37. No reservation of rights letter was sent to Humphrey until March 29, 1963, when an attorney from Pouzzner and Hadden wrote such a letter to him. (Plaintiffs' Exhibit 39).

38. From August, 1962 until November, 1968, Pouzzner and Hadden continued to represent Humphrey in the Jerz lawsuit. (Plaintiffs' Exhibit 45).

39. Defendant Glens Falls directed Pouzzner and Hadden to enter their appearance for the defendants Pierce and Humphrey because Glens Falls was advised by Pouzzner and Hadden that the complaint in each case alleged a cause of action, which if proven, would be covered by its insurance policy issued to Pierce and, under the laws of the State of Connecticut, Glens Falls had to afford Pierce and Humphrey a defense notwithstanding that its investigation disclosed a set of facts and circumstances not covered by the terms of its policy.

40. The case of *Jerz v. Humphrey* was reached for trial in the Superior Court in October 1968.

41. Under date of October 3, 1968 plaintiff Jerz, filed a motion to drop Albert Keith Pierce as a party defendant and for permission to file a substituted complaint, which motion was duly heard and granted by the court on said October 3, 1968. (Plaintiffs' Exhibit 45).

42. Under date of October 4, 1968, plaintiff Jerz filed a substituted complaint. (Plaintiffs' Exhibit 45).

43. The substituted complaint contained no allegation of ownership of the motor vehicle by Pierce and contained no allegation that the use of the motor vehicle was with the permission of Pierce or that Humphrey was acting as the agent and servant of Pierce at the time of the accident. (Plaintiffs' Exhibit 45).

44. On October 30, 1968, plaintiff Jerz filed in court a written withdrawal of his action against Albert Keith Pierce. (Plaintiffs' Exhibit 45).

45. Under date of October 30, 1968, Pouzzner and Hadden at the direction of Glens Falls, filed a motion with proper notice to Humphrey, requesting permission to withdraw its appearance for the defendant, David G. Humphrey. (Plaintiffs' Exhibit 45).

46. On November 8, 1968, the Superior Court after a hearing ordered that the firm of Pouzzner and Hadden be and are given permission to withdraw their appearance for the defendant, David G. Humphrey. (Plaintiffs' Exhibit 45).

47. Under date of November 20, 1968, after due notice to Humphrey, Pouzzner and Hadden filed a written withdrawal of appearance for defendant, David G. Humphrey.

48. From the date of the accident to November 20, 1968, the law firm of Tyler, Cooper, Grant, Bowerman and Keefe had represented United Services and Humphrey in connection with the 1962 accident, were well aware of the pendency of the lawsuits and the position of Glens Falls with respect to policy coverage but failed and refused to enter their appearance for Humphrey in the pending Superior Court actions.

49. Tyler, Cooper, Grant, Bowerman and Keefe from the bringing of the litigation kept track of and advised United Services concerning the progress of the same by inspection of the court records, oral and written communications with Pouzzner and Hadden and oral and written communications with Humphrey.

50. On January 8, 1969, Tyler, Cooper, Grant, Bowerman and Keefe entered their appearance for Humphrey in Docket No. 98756, *Jerz v. Humphrey*, then pending in the Superior Court.

51. On said January 8, 1969, upon request, Pouzzner and Hadden turned over to Tyler, Cooper, Grant, Bowerman and Keefe that portion of their file as set forth in Plaintiffs' Exhibit 56 which documents were sufficient to bring said firm up to date on all material happenings in the case to the date thereof.

52. Thereafter, Tyler, Cooper, Grant, Bowerman and Keefe handled the litigation through a jury trial in the Superior Court and an appeal to the Supreme Court of the State of Connecticut.

53. The fact that written notice by Glens Falls to Humphrey, reserving his right to claim that its insurance policy did not cover Humphrey insofar as liability for the accident of February 13, 1962 was concerned, was not given to Humphrey until approximately seven and one-half months after Pouzzner and Hadden entered their appearance for Humphrey in no way prejudiced either Humphrey or United Services in their defense of the Jerz case or constituted a waiver of any rights of Glen Falls to deny coverage to Humphrey.

54. Glens Falls' Action in providing a defense to Humphrey as long as the complaint alleged a cause of action which if proven, would come within the policy provisions of the policy issued by Glens Falls, fully discharged Glens Falls' obligation to Humphrey.

55. The defense afforded Humphrey by his attorneys during the Superior Court trial was in no way prejudiced by any action or conduct of either Glens Falls or Pouzzner and Hadden.