# ALFONSO NUNEZ *v.* MARY R. PALMER
## (AC 26100)

Bishop, McLachlan and Dupont, Js.

Argued January 13—officially released August 1, 2006

*Jeffrey D. Cedarfield,* for the appellant (defendant).

*Earle Giovanniello,* with whom, on the brief, was *Michael L. Moscowitz,* for the appellee (plaintiff).

*Opinion*

DUPONT, J. The issue of this appeal is whether the trial court should have ordered a remittitur in this negligence action to the defendant, Mary R. Palmer, who claims that there was insufficient evidence to support the jury's award of $31,000 as damages for lost earning capacity by the plaintiff, Alfonso Nunez.[1] A subsidiary question that governs the main issue is whether the plaintiff's lost earning capacity, for which the jury found the defendant liable, ceased when the plaintiff subsequently was injured in an unrelated accident during the course of his employment, and was found to be 100 percent disabled by a workers' compensation commissioner. The defendant does not seek to have set aside[2] the jury's total award of $38,986.70, which also included medical expenses of $3486.70 and noneconomic damages in the amount of $4500, nor does she contest her liability on appeal.[3] We hold that the evidence was sufficient to sustain the jury's verdict for damages for the plaintiff's reduced or lost earning capacity.

---

[1] The court denied the defendant's motions to set aside the verdict and for a remittitur.

[2] If an amount of damages for lost earning capacity is set aside on appeal, or found to be excessive, the appellate court may order an appropriate remittitur as an alternative to a new trial. Cf. *Civiello* v. *Owens-Corning Fiberglass Corp.,* 208 Conn. 82, 86, 544 A.2d 158 (1988); *Buckman* v. *People Express, Inc.,* 205 Conn. 166, 177, 530 A.2d 596 (1987).

[3] The defendant adamantly contested liability during the trial. The defendant claimed that the plaintiff deliberately jumped onto her car while it was stopped. The plaintiff testified that the defendant was driving when her car hit him while he was crossing the street in front of a store, knocking him

In order to answer the questions posed, we must discuss the concept and nature of lost earning capacity, the particular facts as developed at trial and the court's charge to the jury. The question of law to be resolved, broadly stated, is what is the effect of a subsequent payment to a plaintiff, arising out of a second accident, by an unrelated, nonconcurrent source, on the amount of damages that might otherwise be due for the harm caused by a first accident.

There is no precise mathematical formula to calculate damages for loss of earning capacity. See *Jerz* v. *Humphrey*, 160 Conn. 219, 221, 276 A.2d 884 (1971). "Loss of earning capacity is . . . an . . . uncertain area for the assessment of damages. . . . In determining whether there is a loss of earning capacity [t]he 'essential question is whether the plaintiff's capacity to earn [has been] hurt.' . . . Wages before and after an accident are only material as guides to the trier." (Citation omitted.) Id., 222. The assessment of such damages does not depend on the plaintiff's receipt of any wages at all because it is the *capacity* to earn that governs the amount of damages to which a plaintiff is entitled. See *Lashin* v. *Corcoran*, 146 Conn. 512, 514, 152 A.2d 639 (1959). "Recovery of damages for loss of earning capacity is not merely a recovery of wages lost. Salary or wages earned at the time of the injury are merely evidential facts, relevant but not conclusive, in the inquiry as to the pecuniary value of the impairment of earning capacity which an injured person has sustained." Id., 514. In order to recover for an impairment of earning capacity, there must be a reasonable probability that the injured person did sustain such an impairment and that the evidence allows a finding of the reasonable estimate of the dollar amount. *Mulligan* v. *Rioux*, 38

onto the hood of her car. The jury apparently believed the plaintiff and found in his favor, concluding that the percentage of negligence on the part of the plaintiff was zero.

Conn. App. 546, 553, 662 A.2d 153 (1995). In 4 Restatement (Second), Torts § 920A, comment (b) (1979), it is noted that the plaintiff is entitled to damages for the future loss or the impairment of earning capacity. A plaintiff is entitled to the difference between the value of the impairment, given the injury, and what it would have been if there had been no harm to the plaintiff by the defendant. Id., § 924, comment (d). That sum should be reduced to its present value. Id., § 913A, comment (a). In evaluating the loss, the fact finder should take into account the type of work the plaintiff had done before the accident and the type of work he will be able to do after the accident in view of his physical condition, education, experience and age. Id., § 924 comment (d).

The plaintiff, who testified through a Spanish interpreter, stated that prior to the first accident, he did manual labor, holding two jobs: one unloading trailers, and the other cleaning. He stated that he could not read English and could not speak it, except in a limited way, and that he did not know how to use a computer. He stated that he could not work in an office and was limited to manual labor. He was twenty-six at the time of the automobile accident, which occurred on February 11, 2001, and was earning $10 per hour. He did not work for three months after the accident and, subsequently, could work only at one job. He was then paid about $400 per week for a forty hour week at Temple Street Garage in New Haven, where he took out garbage. He subsequently began to work at the Harris Tree Company (Harris). On October 29, 2001, while there, a tree limb fell on him, causing severe facial scars and other serious injuries. He had surgery, necessitating a plate and screws to his left clavicle with a graft from the left iliac crest. He was deemed 100 percent disabled by a physician for his employer's insurance carrier as of March 14, 2002, and again on May 8, 2002. He testified

that he could no longer use his left arm. The workers' compensation file was an exhibit at trial, but it does not indicate the amount of weekly compensation the plaintiff receives or for what period of time it will continue to be paid to him.[4] He testified that he was collecting some money as compensation but did not testify as to its amount. He further testified that he had never sued anyone before suing the defendant, that he had no health insurance at the time of the first accident, paid his own medical bills incurred after that accident and that he has never received any public assistance. The hours he worked at Harris prior to the tree limb falling on him was included in an exhibit and indicated that he was earning $13 per hour and that from August 15 to October 26, 2001, he had earned $4128. The plaintiff's treating chiropractor testified that the plaintiff had a permanent partial disability of the lower back of 5 percent.

The plaintiff testified that the accident with the defendant's car impaired his ability to earn money. The defendant claims that the plaintiff's second accident at work is the reason that he could not work after October 29, 2001, and that she is not responsible for any damages after that date.[5] In effect, the defendant is arguing that

[4] General Statutes § 31-307 (a) provides in relevant part: "If an injury for which compensation is provided . . . results in total incapacity to work, the injured employee shall be paid a weekly compensation equal to seventy-five percent of his average weekly earnings as of the date of the injury . . . and the compensation shall not continue longer than the period of total incapacity."

Unlike damages for a loss of earning capacity, workers' compensation awards are wholly dependent on average wages. The plaintiff in the present case did not seek any damages for lost wages, having received partial compensation for them from his workers' compensation award.

[5] The plaintiff cites *Royer* v. *Hertz Corp.*, 9 Conn. App. 136, 516 A.2d 1372 (1986), in support of his position that the jury verdict should not be disturbed. The defendant, however, claims that *Royer* undercuts the plaintiff's argument because this court in *Royer* upheld the trial court's refusal to charge the jury that it could compensate the plaintiff for lost earning capacity. Id., 140. In *Royer*, the plaintiff sued the defendants for injuries arising out of a car accident. The plaintiff had been injured five months earlier in an unre-

she should benefit from the plaintiff's subsequent total disablement by allowing her a reduction in the amount of damages that would have been due to the plaintiff as the result of her negligence had the plaintiff not suffered a total disablement nine months later. The defendant's argument translates to a claim that the employer is the sole proximate cause of any harm to the plaintiff arising out of lost earning capacity after the date of the plaintiff's injury while at work. See *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 436, 820 A.2d 258 (2003).

"[A] defendant is not entitled to be relieved from any part of the compensation due for injuries resulting from his act where the payment comes from a collateral source, wholly independent of him." *Lashin* v. *Corcoran*, supra, 146 Conn. 515. The money paid to a plaintiff from a source other than the defendant cannot be set off against an impairment of earning capacity due to a defendant's wrongful act. *Johnson* v. *Palomba Co.*, 114 Conn. 108, 114–15, 157 A. 902 (1932). These cases and the cases of which we are aware involve secondary sources that make payment for the same damages arising from the same accident. The payors are usually cotortfeasors or joint tortfeasors, or independent, not legally liable sources. In such cases, the payments made by other sources or other potential or actual defendants do not reduce the recovery to which the plaintiff otherwise is entitled. There may be a double recovery for the plaintiff, but the cases indicate that "a benefit that is directed to the injured party should not be shifted so as to become a windfall to the tortfeasor." 4

---

lated work accident for which she was receiving workers' compensation benefits. *Royer* does not hold that a plaintiff cannot be compensated for a future loss of earning capacity in such a situation. Compensation for loss of earning capacity could be considered by a jury if a plaintiff produced evidence as to that future loss. The plaintiff in *Royer* produced no such evidence, unlike the plaintiff in the present case, and *Royer* therefore is not applicable.

Restatement (Second), supra, § 920A, comment (b). A tortfeasor is responsible for the compensation necessary to alleviate the harm he causes, not limited to the net loss that the injured plaintiff receives. Id. Admittedly, there is a tension between two colliding principles, namely, (1) tortfeasors should not receive a reduction in the amount of damage they cause because a collateral source has also paid the plaintiff for the same harm and (2) a plaintiff should recover only just damages for the same loss once. See *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 23, 699 A.2d 964 (1997).[6]

The question for our resolution is whether the same principles should apply when there are two separate and distinct acts, occurring at different times, and the parties responsible for injuries to the plaintiff are not jointly liable and are not joint tortfeasors. We cannot find a case, and the parties have not cited one, that answers the specific question of how to calculate the damages for lost earning capacity due from the tortfeasor who had first harmed the plaintiff.[7]

[6] *Haynes* involved an underinsured motorist tortfeasor and two defendants who were sued by the plaintiff in a medical malpractice action. The claim for damages against all the defendants was for the decedent's wrongful death. Our Supreme Court held that the principle barring double recovery for a single harm controlled. *Haynes* is not applicable because the allegedly negligent hospital in that case was a joint tortfeasor, the damages sought were for the exact same loss as had been paid by the underinsured motorist insurance carrier, and the uninsured motorist claim was sui generis because of the involvement of an underinsured motorist contract. *Haynes* v. *Yale-New Haven Hospital*, supra, 243 Conn. 24–25.

[7] We are aware of two recent Appellate Court cases that concern successive injuries caused by independent sources, but we conclude that they do not answer the question posed by the present case. See *Bostic* v. *Soucy*, 82 Conn. App. 356, 844 A.2d 878, cert. denied, 269 Conn. 912, 852 A.2d 738 (2004); *Card* v. *State*, 57 Conn. App. 134, 747 A.2d 32 (2000).

In *Card*, we stated that "[t]he trier of fact's responsibility in cases involving injuries sustained in successive accidents is to apportion the damages among the parties whose negligence caused the plaintiff's injuries." *Card* v. *State*, supra, 57 Conn. App. 145. Accordingly, we held that the jury should be instructed, in a new trial, that if it cannot determine "how much of the

In this case, the plaintiff was twenty-six at the time the defendant drove her car into him. If he works until age sixty-five with a 5 percent permanent partial disability, he would have worked for thirty-nine years.[8] If, before the accident, he worked two jobs in a seventy to eighty hour week, a jury could estimate the dollar amount of his loss of earning capacity, taking into account the other facts in evidence.

It was not unreasonable for the jury to award $31,000 to the plaintiff, without deducting anything from that sum for workers' compensation benefits paid to him for two reasons. One reason is that there was no evidence as to what that sum was or for how long it would

plaintiff's damages is attributable to each tortfeasor, the jury may make a rough apportionment [and if it cannot] make even a rough apportionment, it must apportion the damages equally among each party whose negligent actions caused injury to the plaintiff, including settled or released persons as contemplated by [General Statutes] § 52-572h (n)." *Card* v. *State*, supra, 145.

*Card*, however, is not controlling because it did not address the question of lost earnings. Further, in the present case, there is no evidence of a second negligent act because the plaintiff received an award under the workers' compensation statute, which does not depend on negligence, and it is uncertain from the evidence that 5 percent of the plaintiff's disability is attributable to the defendant.

In *Bostic*, this court held that the *Card* instruction was not necessary because the evidence indicated that the plaintiff's injuries resulting from a second accident were different from the injuries sustained in an earlier accident, and, presumably, the evidence would allow the trier of fact to assign liability with reasonable certainty. *Bostic* v. *Soucy*, supra, 82 Conn. App. 359-60. We also note that, in the present case, the plaintiff's injuries resulting from the defendant's negligence involved his back, whereas the injuries resulting from the second accident that caused his inability to work involved his left arm.

[8] There was no actuarial table of the plaintiff's life expectancy introduced as an exhibit. It is, however, not his life expectancy that controls lost earning capacity in this case but the duration of his working life. It is common knowledge that on the average, people in the United States work until at least age sixty-five. If a fact is within the common purview of the populace, a juror may take it into account. Cf. *Shea* v. *Doherty*, 91 Conn. App. 367, 372, 880 A.2d 1017 (2005) (common knowledge consumption of alcohol impairs ability to observe, recall); *State* v. *Bothwell*, 78 Conn. App. 64, 73, 826 A.2d 182 (common knowledge drunken drivers present danger to other drivers), cert. denied, 266 Conn. 908, 832 A.2d 72 (2003).

be payable or its connection to the impairment of the plaintiff's earning capacity.[9] The second reason is that we do not see a logical reason to treat sums of money received by a plaintiff from a second *nonconcurrent* source any differently from money due or received from a second *concurrent* source. In both cases, the question is whether a defendant, who has harmed the plaintiff, should receive a credit for sums paid by another source or whether he should pay the entire sum proximately caused by his negligence. We conclude that the defendant in this case should be responsible for all of the damages due to the plaintiff's impaired earning capacity without regard to the workers' compensation award.[10]

The court charged the jury that the plaintiff was entitled to reasonable compensation for all of his injuries and losses, past and future, proximately caused by the defendant. The court did not mention the fact that the plaintiff was receiving money for his job related injuries from a workers' compensation award, although the jury was aware of the award, as well as the finding of the total disability of the plaintiff, and both counsel had mentioned the award in their summations to the jury. The court correctly told the jury that the plaintiff's

[9] Under the workers' compensation system, fault or the negligence of the plaintiff's employer is not involved in any compensation that an employee may receive, and the amount to be paid by the employer is based on a percentage of average weekly earnings, not the plaintiff's lost earning capacity.

[10] We note that this result is consistent with the policy underlying the common-law collateral source rule. Under this rule, "a defendant is not entitled to be relieved from paying any part of the compensation due for injuries proximately resulting from his act where payment [for such injuries or damages] comes from a collateral source, wholly independent of him." (Internal quotation marks omitted.) *Rametta* v. *Stella*, 214 Conn. 484, 489, 572 A.2d 978 (1990). As a matter of policy, the rule requires that any windfall should fall on the injured person, as opposed to the wrongdoer. *Gorham* v. *Farmington Motor Inn, Inc.*, 159 Conn. 576, 580, 271 A.2d 94 (1970). We recognize that the rule does not apply in a case such as this in which separate and distinct injuries were caused in separate incidents. Nonetheless, the considerations that give rise to that rule inform our analysis.

injuries and losses included those up to and including the time of trial and those he would be reasonably likely to suffer in the future. The jury was also told that the plaintiff was entitled to damages in an amount equal to his lost earning capacity if, by a preponderance of the evidence, he had proved its reasonable monetary value.[11] The dollar amount of damages for loss of earning capacity necessarily leaves a jury with leeway in assessing damages; *Jerz* v. *Humphrey*, supra, 160 Conn. 225; and the precise amount was dependent on several determinations within its province, as previously discussed. The award in this case neither shocks the conscience nor falls outside the limits of just damages.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] Neither the plaintiff nor the defendant took exception to the charge other than calling the court's attention to a typographical mistake that the court corrected before sending the written charge into the jury room.